*Court of Appeals*
*Fourth Court of Appeals District of Texas*





★ ★ ★ ★ ★ ★ ★

# OPINION

No. 04-11-00821-CV

**CITY OF SAN ANTONIO**,
Acting By and Through City Public Service Board a/k/a CPS Energy,
Appellant

v.

**WHEELABRATOR AIR POLLUTION CONTROL, INC.**,
Appellee

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-CI-13756
Honorable Larry Noll, Judge Presiding

Opinion by:     Phylis J. Speedlin, Justice

Sitting:        Phylis J. Speedlin, Justice
                Steven C. Hilbig, Justice
                Marialyn Barnard, Justice

Delivered and Filed:  August 1, 2012

REVERSED AND RENDERED; REMANDED FOR FURTHER PROCEEDINGS

The City of San Antonio, acting by and through CPS Energy[1] (hereinafter "CPS"),

appeals the trial court's denial of its plea to the jurisdiction in this lawsuit by Wheelabrator Air

Pollution Control, Inc. in which it asserts a breach of contract claim and, alternatively, a quasi-

contractual quantum meruit claim to recover a 10% contract retainage withheld by CPS. This

---

[1] The City of San Antonio owns and operates the electric and gas utility known as CPS Energy, which is managed
by a five-member board of directors; the City's mayor is a voting member of the board.

interlocutory appeal raises a question of first impression—whether the governmental/proprietary distinction employed in the Texas Tort Claims Act applies in a contractual or quasi-contractual setting to determine whether a municipality is immune from suit. We hold that the governmental/proprietary distinction does not apply, and conclude CPS is immune from suit on the quantum meruit claim. Accordingly, we reverse the trial court's order denying CPS's plea to the jurisdiction, render judgment dismissing Wheelabrator's quantum meruit claim for want of jurisdiction, and remand the cause to the trial court for further proceedings.[2]

### FACTUAL AND PROCEDURAL BACKGROUND

***Contract for Project.*** On or about August 5, 2004, Wheelabrator Air Pollution Control, Inc. ("Wheelabrator") and Casey Industrial, Inc. ("Casey") entered into a written contract with CPS for the design and construction of two baghouses at the J.T. Deely Station, a coal-fired power station owned and operated by CPS. A baghouse traps fly ash, a coal by-product, before it enters the air, providing a reduction in emissions from a power station. CPS agreed to pay $41,818,460 to Wheelabrator and $43,541,737 to Casey for their roles in the project. Wheelabrator was involved in the engineering design and procurement, while Casey was involved in the actual construction of the baghouse units. The contract provided that CPS would withhold from Wheelabrator 10% of the total contract price ($4,173,099) as retainage. CPS fully paid Wheelabrator its contract price, except for the agreed upon 10% retainage. When Wheelabrator sought payment of the retainage in 2007, contending it had fully and timely performed, CPS informed Wheelabrator that it was going to withhold payment of the retainage pending resolution of the claims asserted by Casey against CPS. Casey sought to recover an

---

[2] A related appeal also issued on this date, *City of San Antonio, Acting By and Through City Public Service Board a/k/a CPS Energy v. Casey Industrial, Inc.* (Appeal Nos. 04-11-791-CV & 04-11-00814-CV), arises out of the same underlying dispute and raises the same issue as to whether CPS is immune from suit on a quantum meruit claim, along with an additional issue concerning the validity of the contract.

additional $12,000,000 from CPS for costs of delay it alleged were caused by Wheelabrator. Eventually, both Casey and Wheelabrator filed suit against CPS.

*Casey Lawsuit.* In 2008, Casey filed suit against CPS asserting claims of breach of contract, implied contract/quasi-contract, and quantum meruit. The litigation proceeded for three years before Wheelabrator separately filed suit against CPS. Casey filed a summary judgment motion, asserting that the three-party contract entered into by CPS, Wheelabrator, and Casey is void due to violations of Texas' procurement law requiring competitive bidding, and that Casey should therefore be allowed to recover in quantum meruit for additional work it performed. The City, acting on behalf of CPS, filed its own summary judgment motion asserting the contract is valid and that Casey is barred from any equitable recovery outside the contract. After a hearing, the trial court denied the City's motion and granted Casey's summary judgment motion, finding that the contract is void and that Casey "is entitled to prove liability, if any, and damages, if any, under the doctrine of quantum meruit." The City also filed a plea to the jurisdiction asserting it is immune from suit for additional work or quantum meruit; the trial court denied the plea. The City is appealing both rulings in the *Casey* appeal—the summary judgment order finding the contract is void, and the denial of its plea to the jurisdiction asserting immunity from the quantum meruit claim.

*Wheelabrator Lawsuit.* Wheelabrator filed suit against CPS on August 23, 2011, seeking to recover the $4,173,099 in retainage funds under a breach of contract claim and, alternatively, a quantum meruit claim.[3] CPS filed a plea to the jurisdiction asserting immunity from suit because there is no waiver of sovereign immunity for contractual claims outside the

---

[3] Wheelabrator was not, and is not currently, a participant in the *Casey* litigation. CPS has sought to consolidate the *Wheelabrator* litigation with the *Casey* litigation at the trial level, but the trial court has not yet ruled on the issue of consolidation.

scope of Chapter 271 of the Local Government Code or for quantum meruit claims in equity. Wheelabrator responded that CPS does not have any immunity from suit for functions taken in its proprietary capacity, such as operation of a public utility, and even if it had immunity, it has waived it through its conduct; therefore, Wheelabrator's quantum meruit claim should survive. Wheelabrator's pleadings allege that CPS "is not immune from suit by virtue of the express terms of the Agreement, and by virtue of Chapter 271 of the Texas Local Government Code."

At the end of a hearing on the plea to the jurisdiction, the trial court denied CPS's plea. The court's written order finding CPS is "not immune from suit for claims for additional work or quantum meruit," and denying the plea to the jurisdiction, was signed on November 15, 2011. CPS now appeals that finding. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West Supp. 2011).

## STANDARD OF REVIEW

Subject matter jurisdiction is necessary for a court to have the authority to resolve a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). Sovereign and governmental immunity from suit deprive a trial court of subject matter jurisdiction. *Reata Const. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006). To invoke a trial court's subject matter jurisdiction over a claim against a governmental entity, the plaintiff must allege a valid waiver of immunity from suit and plead sufficient facts demonstrating the trial court's jurisdiction. *Tex. Dept. of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Tex. Ass'n of Bus.*, 852 S.W.2d at 446. A governmental entity properly raises immunity through a plea to the jurisdiction. *Reata*, 197 S.W.3d at 374. In reviewing a trial court's ruling on a plea to the jurisdiction, we do not examine the merits of the cause of action, but consider only the plaintiff's pleadings and any evidence relevant to the jurisdictional inquiry. *Miranda*, 133

- 4 -

S.W.3d at 227; *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). We construe the pleadings liberally in favor of jurisdiction, and accept the pleadings' factual allegations as true. *Miranda*, 133 S.W.3d at 226. The existence of subject matter jurisdiction is a question of law that we review de novo. *Tex. Nat'l Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998).

### IMMUNITY FROM SUIT

On appeal, CPS contends the trial court does not have jurisdiction over Wheelabrator's quantum meruit claim because (i) the legislature has not waived CPS's immunity from suit for quantum meruit claims, (ii) the proprietary-governmental dichotomy has not been extended beyond the tort claim context, and (iii) CPS did not waive its immunity from suit by its conduct.

### *Presumption of Governmental Immunity*

Sovereign immunity protects the State, as well as its agencies and officials, from lawsuits for damages and from liability. *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivs. Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 323-24 (Tex. 2006) (sovereign is immune from both liability and suit). "The appurtenant common-law doctrine of governmental immunity similarly protects political subdivisions of the State, including counties, cities, and school districts." *Id.* at 324; *City of Houston v. Williams*, 353 S.W.3d 128, 134 n.5 (Tex. 2011) (noting distinction between sovereign and governmental immunity). Political subdivisions of the State, such as the City of San Antonio, have governmental immunity from suit unless the Legislature has expressly waived such immunity by statute. *Williams*, 353 S.W.3d at 134; *Ben Bolt*, 212 S.W.3d at 324. A statute shall not be construed as waiving immunity unless the waiver is effected by "clear and unambiguous" language. TEX. GOV'T CODE ANN. § 311.034 (West Supp. 2011); *Williams*, 353 S.W.3d at 134. It has long been recognized that it

is the Legislature's sole province to waive immunity from suit. *IT-Davy*, 74 S.W.3d at 853-54. On the other hand, a political subdivision may waive its immunity from liability by entering into a contract with a private party. *Id.* at 854. Only immunity from suit operates as a jurisdictional bar; immunity from liability constitutes an affirmative defense. *Williams*, 353 S.W.3d at 134; *Miranda*, 133 S.W.3d at 224.

### *Limited Legislative Waiver of Immunity for Certain Contract Claims*

The Legislature has clearly and unambiguously waived a governmental entity's immunity from suit for certain contractual claims. *Ben Bolt*, 212 S.W.3d at 327. Chapter 271 of the Local Government Code expressly waives qualifying local governmental entities' immunity from suit for certain breach of contract claims. TEX. LOC. GOV'T CODE ANN. §§ 271.151-.160 (West 2005 & Supp. 2011). For section 271.152's limited waiver to apply, three elements must be established: (1) the party against whom waiver is asserted must be a "local governmental entity," (2) authorized to enter into contracts, and (3) the entity must have in fact entered into a "contract subject to this subchapter." *Williams*, 353 S.W.3d at 134; TEX. LOC. GOV'T CODE ANN. § 271.152 (West 2005). A "contract subject to this subchapter" is defined as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." TEX. LOC. GOV'T CODE ANN. § 271.151(2) (West 2005); *Williams*, 353 S.W.3d at 135. Thus, the legislative waiver of immunity in the contract context is restricted to suits for breach of a written contract for goods and services. TEX. LOC. GOV'T CODE ANN. § 271.152; *Williams*, 353 S.W.3d at 135. Wheelabrator has indeed brought a breach of contract claim based on its written contract with CPS as its primary claim, and CPS has not claimed immunity with respect to this claim.

CPS argues that because the Legislature chose to limit the statutory waiver of immunity for contractual claims against governmental entities to suits for breach of express written contracts, it consciously excluded quasi-contractual claims based on an implied contract or quantum meruit from the waiver. We agree. In 2008, we addressed this issue in *Somerset Indep. Sch. Dist. v. Casias*, and held that section 271.152's waiver of immunity does not apply to an implied contract claim or claim of quantum meruit. *Somerset Indep. Sch. Dist. v. Casias*, No. 04-07-00829-CV, 2008 WL 1805533, at *3 (Tex. App.—San Antonio Apr. 23, 2008, pet. denied) (mem. op.). We concluded that, based on its plain language, section 271.152 applies only to written contracts, and that quantum meruit claims, being based in equity, "are simply not included in section 271.152's limited waiver of governmental immunity." *Id.*; *see Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 49-50 (Tex. 2008) (equitable theory of recovery based on quantum meruit is a quasi-contractual doctrine under which one who provides valuable services may establish that recipient has implied-in-law obligation to pay for value of services when on reasonable notice that provider expects to be paid). Several other courts of appeals have agreed. *See, e.g., Harris Cnty. Flood Control Dist. v. Great Am. Ins. Co.*, 309 S.W.3d 614, 617 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (section 271.152 does not apply to quantum meruit claims, which are barred by governmental immunity) (citing *City of Houston v. Petroleum Traders Corp.*, 261 S.W.3d 350, 359-60 (Tex. App.—Houston [14th Dist.] 2008, no pet.)); *Vantage Sys. Design, Inc. v. Raymondville Indep. Sch. Dist.*, 290 S.W.3d 312, 316-17 (Tex. App.—Corpus Christi 2009, pet. denied) (holding section 271.152's waiver of immunity does not extend to quantum meruit claims); *City of Houston v. Swinerton Builders, Inc.*, 233 S.W.3d 4, 12-13 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (plain language of section 271.152 limits waiver of sovereign immunity

to breach of contract, and "lists no other claims, either in law or in equity;" thus, legislature did not intend to include quantum meruit claims within the waiver).

Under the rules of statutory construction, we take the plain meaning of the statutory language, which expressly limits the waiver to breach of contract claims based on written contracts, and give effect to the Legislature's omission of other types of contractual and quasi-contractual claims. TEX. GOV'T CODE ANN. § 311.022 (West 2005); *Hernandez v. Ebrom*, 289 S.W.3d 316, 318 (Tex. 2009) (statutory interpretation begins with plain language of statute); *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008) (court construes legislative intent as expressed by statute's words); *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981) (in construing statute, court gives effect not only to terms used, but also to terms the legislature chose not to use). In excluding equitable claims such as quantum meruit from the waiver, the Legislature balanced competing interests and made a policy decision that binds this court. *Somerset*, 2008 WL 1805533, at *3.

### *Proprietary/Governmental Distinction*

Wheelabrator responds to CPS's argument that there is no waiver of immunity for contractual or quasi-contractual claims outside the scope of Chapter 271 by asserting CPS has no immunity in the first place with respect to its quantum meruit claim because it acted in a proprietary capacity when it contracted with Wheelabrator and Casey for the baghouse project. Wheelabrator seeks to import the proprietary/governmental distinction from the Texas Tort Claims Act into this quasi-contractual context. In Chapter 101 of the Civil Practice and Remedies Code, known as the Texas Tort Claims Act ("TTCA"), the Legislature has clearly waived governmental immunity from liability and suit for certain tort claims arising out of its governmental functions, as specified in the Act. *See* TEX. CIV. PRAC. & REM. CODE ANN.

§§ 101.021-.029 (West 2011). A municipality's governmental functions are those conducted "in the performance of purely governmental matters solely for the public benefit." *Tooke v. City of Mexia*, 197 S.W.3d 325, 343 (Tex. 2006) (quotation omitted). In the TTCA, the Legislature specifically excluded from the waiver of immunity all claims arising from a municipality's proprietary functions, which it defined to include "the operation and maintenance of a public utility." TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(b) (West 2011); *Tooke*, 197 S.W.3d at 343 (a municipality's proprietary functions are those conducted "in its private capacity, for the benefit only of those within its corporate limits, and not as an arm of the government").

In arguing for application of the governmental/proprietary dichotomy to its quasi-contractual claim, Wheelabrator first relies on cases that have characterized a city's operation of a public utility as a proprietary function. *See San Antonio Indep. Sch. Dist. v. City of San Antonio*, 550 S.W.2d 262, 264 (Tex. 1976) ("A city which owns and operates its own public utility does so in its proprietary capacity."); *see also Int'l Bank of Commerce of Laredo v. Union Nat'l Bank of Laredo*, 653 S.W.2d 539, 546 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.) (noting that a municipality's proprietary functions have been defined to include providing gas and electric service). Wheelabrator then argues that under common law when a municipality engages in a proprietary function it is subject to the same duties and liabilities as private persons and corporations, i.e., it is not immune from claims arising out of its proprietary acts. *See Gates v. City of Dallas*, 704 S.W.2d 737, 739 (Tex. 1986) (noting that, "[c]ontracts made by municipal corporations in their proprietary capacity have been held to be governed by the same rules as contracts between individuals"). Thus, Wheelabrator asserts CPS has no immunity from a common law quantum meruit claim arising out of its proprietary actions.

The flaw in Wheelabrator's argument is that this common law principle pre-dates the 2005 enactment of Chapter 271 in which the Legislature established a statutory scheme imposing a limited waiver of a municipality's immunity for certain contract claims; it excluded quasi-contract claims such as quantum meruit from the statutory waiver of immunity, as discussed supra. As it had already done in the tort-claims context, the Legislature could have incorporated the proprietary/governmental distinction into the statutory waiver scheme for contract claims; however, it chose not to incorporate that distinction into a contract setting. *See Tex. Mut. Ins. Co. v. Ruttiger*, No. 08-0751, 2012 WL 2361697, at *19 (Tex. June 22, 2012) (the court "presumes the Legislature deliberately and purposefully selects words and phrases it enacts, as well as deliberately and purposefully omits words and phrases it does not enact"). It is the Legislature's function to weigh competing interests and establish public policy. *Id.* at *17. "In the contract-claims context, legislative control over sovereign immunity allows the Legislature to respond to changing conditions and revise existing agreements if doing so would benefit the public." *IT-Davy*, 74 S.W.3d at 854. In excluding quasi-contractual claims from Chapter 271's waiver of immunity, the Legislature made a public policy decision. *Tooke*, 197 S.W.3d at 332-33 (Chapter 271's waiver of governmental immunity in the contract-claims context involves complex policy choices best made by the Legislature).

In addition, *Gates* pre-dates *Tooke* in which the Supreme Court made clear that sovereign immunity is the "default" rule for municipalities with respect to all types of claims. *Id.* at 331-32 (sovereign immunity in the absence of a clear legislative waiver is the firmly established principle); *see also Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003) (general rule is immunity). When it issued *Tooke* the Supreme Court was well aware of the common law principle espoused in *Gates*, i.e., that "contracts made by municipal corporations in

their proprietary capacity . . . [are] governed by the same rules as contracts between individuals." *Gates*, 704 S.W.2d at 739. With that knowledge, the Supreme Court used a compare signal when citing *Gates* right after explicitly stating it has never held that the proprietary/governmental distinction applies to determine whether immunity is waived for breach of contract claims, thereby putting *Gates* into question. *Tooke*, 197 S.W.3d at 343 n.89. Moreover, *Gates* deals with immunity from liability, not immunity from suit. *Gates*, 704 S.W.2d at 739 (proprietary functions subject municipalities to the "same duties and liabilities" as private persons).

By asking us to hold that CPS has no immunity from a common law quantum meruit claim arising out of a proprietary function, Wheelabrator requests that we create an exception to the default principle of sovereign immunity confirmed in *Tooke*. We decline to do so, as that is the sole province of the Legislature. *IT-Davy*, 74 S.W.3d at 853-54. As of this date, neither the Texas Legislature nor the Texas Supreme Court has stated that the proprietary/governmental distinction used in the tort-claims context is to be used to determine a municipality's immunity from suit on a contractual or quasi-contractual claim such as quantum meruit. Indeed, in considering application of the governmental/proprietary distinction to a breach of contract claim, the Supreme Court expressly said in *Tooke*, "we have never held that this same distinction [proprietary/governmental functions] determines whether immunity from suit is waived for breach of contract claims, and we need not determine that issue here." *Tooke*, 197 S.W.3d at 343. Since *Tooke*, the Supreme Court has not revisited the issue.[4]

---

[4] Wheelabrator cites us to *PKG Contracting, Inc. v. City of Mesquite*, 197 S.W.3d 388, 388-89 (Tex. 2006) (per curiam), in which the Court rejected PKG's argument that the city's immunity from suit for breach of contract was waived because it acted in a proprietary capacity when it contracted for construction of a storm drainage system, finding it was part of the city's governmental functions. *PKG* was issued on the same day as *Tooke*, and the immunity analysis in *PKG* was not conducted under Chapter 271; in fact, the Court noted the newly enacted statute, and remanded for a determination of whether the statutory waiver of immunity applied to the breach of contract claim at issue. *Id.* at 389.

Wheelabrator cites several courts of appeals cases decided after *Tooke* that it characterizes as applying the governmental/proprietary distinction in determining whether governmental immunity was waived for contract and quantum meruit claims, but they are not persuasive. In all the cases, the courts of appeals did not reach the issue of whether the governmental/proprietary distinction applies to contractual or quasi-contractual claims because they determined the municipality was engaged in a governmental function. *See, e.g.*, *City of San Antonio v. Reed S. Lehman Grain, Ltd.*, No. 04-04-00930-CV, 2007 WL 752197, at *3 (Tex. App.—San Antonio Mar. 14, 2007, pet. denied) (city was acting in a governmental capacity and was immune from suit raising breach of contract and estoppel claims); *East Houston Estate Apartments, L.L.C. v. City of Houston*, 294 S.W.3d 723, 731-32 (Tex. App.— Houston [1st Dist.] 2009, no pet.) (city acted in governmental capacity in entering into loan agreement and was thus immune from breach of contract claim); *City of Emory v. Lusk*, 278 S.W.3d 77, 83 (Tex. App.— Tyler 2009, no pet.) (city was immune from suit for breach of contract); *City of Houston v. Petroleum Traders Corp.*, 261 S.W.3d 350, 355-56 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (stating it need not decide whether the governmental/proprietary dichotomy applies in contract actions, but "even assuming for argument's sake that the dichotomy does apply" to the contract claim, the city's procurement of fuel was a governmental function); *City of Weslaco v. Borne*, 210 S.W.3d 782, 790-93 (Tex. App.—Corpus Christi 2006, pet. denied) (city's operation of mobile home park was governmental function, and thus city was immune from suit for breach of contract).[5]

---

[5] Wheelabrator also relies on *Temple v. City of Houston*, in which the court held the city had no sovereign immunity from a breach of contract suit because it was performing a proprietary function when it provided life insurance benefits to its employees. *Temple v. City of Houston*, 189 S.W.3d 816, 819-21 (Tex. App.—Houston [1st Dist.] 2006, no pet.). *Temple* was decided in January 2006, before *Tooke* was issued.

In sum, the Texas Supreme Court has so far declined to address whether application of the governmental/proprietary distinction to a contractual or quasi-contractual setting is appropriate for purposes of determining a municipality's immunity from suit. *Tooke*, 197 S.W.3d at 343. The appellate courts that have considered the issue since *Tooke* have not squarely reached the issue, concluding that governmental functions were involved. In Chapter 271, the Legislature has balanced competing public and private interests and enacted a comprehensive scheme for handling contract claims against municipalities. *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 414 (Tex. 2011). The statutory scheme for waiving a municipality's immunity from suit in the contract context omits quasi-contractual claims such as quantum meruit. *Somerset*, 2008 WL 1805533, at *3. The Legislature easily could have included the proprietary/governmental dichotomy it used in the tort-claims context in the contract-claims scheme, but chose not to do so. As it is solely the Legislature's role to "clearly and unambiguously" waive governmental immunity from suit, and it has not done so for quantum meruit claims, we hold CPS is immune from suit on Wheelabrator's quantum meruit claim. *See IT-Davy*, 74 S.W.3d at 853-54.

### *Waiver of Immunity by Conduct*

Finally, Wheelabrator makes an equitable argument, contending CPS waived its immunity from the quantum meruit claim by accepting benefits under the contract while wrongfully withholding the retainage; in addition, it asserts CPS was complicit in violating the competitive bidding laws based on the trial court's finding in the *Casey* litigation that the contract is void. CPS asserts that the circumstances of this case do not warrant a finding of waiver of immunity by conduct, and further asserts the concept of waiver by conduct has not been applied by the courts. We agree.

In arguing for application of a waiver-by-conduct, Wheelabrator relies on the Supreme Court's footnote in a 1997 case, *Federal Sign v. Texas Southern University*, that suggested there could be circumstances where the State waives its sovereign immunity by its conduct, other than by entering into a contract. *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 408 n.1 (Tex. 1997). Despite the footnote, in the years since *Federal Sign* the Supreme Court has declined to apply a waiver-by-conduct theory. *See, e.g., Sharyland*, 354 S.W.3d at 414 (it is sole province of legislature to recognize waiver-by-conduct exception to immunity in breach of contract suit); *IT-Davy*, 74 S.W.3d at 856-57 (rejecting a waiver-by-conduct argument and stating it is legislature's province to waive immunity); *Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007) (governmental unit does not waive immunity from breach of contract action by accepting benefits under a contract); *Catalina Dev., Inc. v. County of El Paso*, 121 S.W.3d 704, 705-06 (Tex. 2003) (nothing in circumstances showed waiver of immunity by conduct). We have also repeatedly declined to apply waiver-by-conduct. *See Somerset*, 2008 WL 1805533, at *4 (also noting that although supreme court has discussed the "possibility" of waiver by conduct absent a legislative waiver of immunity, "it has recognized a 'tension' in this waiver concept"); *Dimmit Cnty. Mem'l Hosp. v. CPM Med., LLC*, No. 04-11-00710-CV, 2012 WL 1431366, at *5 (Tex. App.—San Antonio Apr. 25, 2012, no pet.) (mem. op.). Based on this precedent, CPS's conduct in accepting the benefit of the contract while withholding the retainage did not waive its governmental immunity.

## CONCLUSION

Because the Legislature's limited waiver of governmental immunity from suit in Chapter 271 does not include quantum meruit claims, and the proprietary/governmental distinction from the TTCA does not apply in this contractual or quasi-contractual context, CPS is immune from

suit on Wheelabrator's quantum meruit claim. In addition, the circumstances do not support a waiver of immunity by conduct. Therefore, the trial court erred in denying CPS's plea to the jurisdiction as to the quantum meruit claim. Accordingly, we reverse the trial court's order denying CPS's plea to the jurisdiction and render judgment that Wheelabrator's quantum meruit claim is dismissed for want of jurisdiction. We remand the cause to the trial court for further proceedings consistent with this opinion.

Phylis J. Speedlin, Justice