Don R. BLYTHE, Appellant,

v.

The CITY OF GRAHAM et al., Appellees.

No. 15682.

Court of Civil Appeals of Texas.

Fort Worth.

Feb. 3, 1956.

Rehearing Denied March 2, 1956.

528

Tom M. Miller, Graham, for appellant.

Rodgers & Stephens and T. J. Rodgers, Graham, for appellee City of Graham.

Lattimore & Lattimore and H. S. Lattimore, Fort Worth, for appellees Newton-Burkett, Inc., and Harry Newton, Inc.

MASSEY, Chief Justice.

The City of Graham engaged in a real estate subdivision development project in connection with the disposition of certain lands deeded to the city. It filed a plat and dedication and later on filed an instrument imposing restrictions, covenants and conditions upon the lots and blocks not dedicated for public purposes within the subdivision. Don R. Blythe purchased a lot in a certain block and erected a building thereon subsequent to the time instruments in connection with the foregoing were placed of record with the county clerk of Young County. Subsequently, the authorities of the city decided that a more ready and profitable sale of the real estate in the block of the subdivision located immediately opposite that in which Blythe had built his home could be accomplished by a reduction in the size of the lots as previously platted and by reducing the restrictions as to floor space and costs, etc., of the houses to be built thereon. Without resort to approval of their action on the part of any other person, the officers of the City of Graham passed ordinances by which they replatted the lots in the block across from the Blythe house and reduced the requirements as to square feet of floor space, costs, etc., of buildings erected thereon. With this done, the city was able to dispose of some of the lots. Two corporations, Newton-Burkett, Inc., and Harry Newton, Inc., purchased lots and built houses thereupon in accord with the later action of the city. Blythe brought a suit for declaratory judgment and for damages on account of trespass.

Upon the conclusion of the evidence of the plaintiff Blythe before the trial court, the defendants filed a motion for instructed verdict. The motion was granted and the jury was instructed to return a verdict for the defendants. Judgment was entered based thereupon. Blythe appealed.

Judgment reversed and remanded.

The city purported to act in every instance related to the case by way of enacting ordinances. It was a home rule city and its action was in accord with the provisions of its charter and Art. 1176b-1, V.A T.S., except that it sometimes failed to publish its ordinances. In originally plat-

ting and dedicating the subdivision of the city, it followed the procedure prescribed by Art. 974a, relating to the manner and mode of platting and recording subdivisions or additions. There is no question but what the circumstance was such that had the procedure followed been that of a private corporation the resulting situation would have been that of a subdivision accepted and approved by the proper authorities. We here consider that to be true as applied to the city, the matter of validity of its action not being at issue and not necessary to be considered in connection with any threatened private injury.

Subsequently, the city authorized its mayor to sell the lots within the subdivision which were not dedicated to public purposes. A little later, apparently believing that a more profitable and ready sale of these lots would thereby be possible, the city filed of record an instrument in the form of an ordinance, and denominated an ordinance, imposing restrictions and covenants and conditions "running with the land" upon the lots and blocks within the subdivision. In reliance thereon, Blythe purchased a lot in a certain block of the subdivision and caused his home to be built thereon. Immediately across the street from Blythe, in a different block of the subdivision, were lots considerably larger than those in the block in which Blythe bought. On these larger lots were restrictions which required any house built thereon to be of brick veneer construction and to have not less than 1600 square feet space per each house. It was also provided that any such house should cost at least "approximately" $10,000. We expressly decline to pass on the validity of the act of the city as here described. It is not under attack. We do not believe the nature of the case requires this court to pass upon the propriety of the venture undertaken.

The lots in the block where Blythe built found a ready sale. Those in the block across the street did not sell so well and the lots on the block remained vacant. The city decided that if the block could be replatted so as to reduce the lot sizes, and if the restrictions could be lifted to such de-

gree that the houses to be built thereon need be no better than was required on the lots in the block where Blythe's home was situated, purchasers could be interested in the property. Wholly ignoring the provisions of Section 5 of Art. 974a, relating to procedure which should be taken pursuant to the vacation of any plat or plan, or replatting any subdivision, the City passed an amendment to the instrument denominated as an ordinance imposing the original restrictions. It likewise replatted the lots within the block. The city sought thereby to accomplish the reduction in lot sizes, and the imposition of lighter and less burdensome restrictions in the stead of those originally imposed. Two corporations engaged in the business of speculative building purchased some of the lots as so replatted and built several houses thereon which contained less than 1600 square feet space each, and which otherwise failed to come up to the requirements in the instrument or ordinance which imposed the original restrictions.

While such houses, or some of them, were in the process of being built, Blythe filed suit against the City of Graham and against Newton-Burkett, Inc., and Harry Newton, Inc., the corporations who had acquired the newly replatted lots. They had started constructing houses thereon. By the action as originally filed, an injunction was sought, but later on, before the trial was held, the plea for injunctive relief was abandoned. The state of Blythe's pleadings upon the trial was for a declaratory judgment, adjudicating his proprietary rights in the block of the subdivision which was replatted and wherein the restrictions as originally imposed were lifted, and for damages on account of trespass through such ineffective replatting and through the erection of the houses upon the lots as replatted.

Upon the trial of the case, Blythe's attorney proved the original plat and dedication, and proved the city's authorization of its mayor to sell the lots within the subdivision not dedicated to public purposes. He also proved that any replat of the sub-

division was not in accord with the provisions of Section 5 of Art. 974a, and that Blythe never consented to any change in the restrictions, covenants and conditions in existence at the time of the purchase of a lot in the subdivision. He ran into trouble, however, when he attempted to prove the instrument or ordinance which originally imposed the restrictions upon the lots and blocks within the subdivision. Finally, through a proof and tender of the official minutes of the city council of the City of Graham, he proved the enactment of the same as an ordinance. The minutes showed that it was duly and properly passed by the council. The instrument was shown to have been filed and of record at the time of Blythe's purchase. However, counsel was not in position to prove the publication of the ordinance. Under ordinary circumstances, it would be properly said that counsel had failed to offer sufficient proof to render an ordinance admissible in evidence. 30-A Tex.Jur., p. 285, "Municipal Corporations", sec. 294, "Proof of Publication". Believing that Blythe had never proven publication as required by law, the trial court held the instrument inadmissible. Blythe rested his case and a verdict was instructed against him.

■ Under the circumstances of this case, we are of the opinion that sufficient proof was tendered upon the instrument to compel its admission. Even though the instrument had never been published as the city charter required an ordinance to be published, and indeed this seems to have been the case, it was an instrument which had been filed of record with the county clerk of the county within which the property affected thereby was located. Blythe was shown to have acted in the good faith belief of the efficacy thereof and to have changed his position as the result in purchasing a lot in the subdivision. He was furnished an abstract of title in which appeared the original plat and dedication, the authorization to the mayor to sell the lots therein, and the instrument in question. In deciding upon his purchase, Blythe acted upon the belief that the instruments showed a general building scheme or plan which

enhanced the value of the property he finally purchased and built upon. He was required by the city manager of the City of Graham to redraw the plans of his house so that the house as finally built would comply with the instrument's covenants, conditions and restrictions before he could obtain a building permit. Blythe testified that the subsequent changes effected or attempted to be effected by the city, and the action thereafter taken in light of the change by the building of the houses by the other defendants, had reduced the value of his own property. His proof established nominal damages as the result thereof.

■ Under these circumstances, we believe rules of law applicable to individuals and private corporations would be those proper to be applied, and that the City of Graham and those holding under it should have no greater dignity as regards the controversy presented than would any other person who subdivides property and imposes restrictions thereon. Let us suppose that the person who granted the property to the city first subdivided it, filed a plat and dedication of it, obtained its acceptance, filed an instrument imposing restrictions by way of covenants and conditions, sold Blythe his property, and then granted all the property remaining in the subdivision to the City of Graham, in that order. If the city thereafter desired to replat it or to ease the restrictions upon the lots and blocks belonging to it, surely it would have had to follow the procedure prescribed in Section 5 of Art. 974a in connection with the replat, and it would have to consider the rights of Blythe in connection with lifting the covenants, conditions and restrictions theretofore imposed upon the land in the subdivision, in which he has acquired an interest. 12 Tex.Jur., pp. 6-177, "Covenants and Conditions". The situation is not to be distinguished merely because the city did these things instead of its grantor. The city's act, as by ordinance, coupled with the placing of it of record, is analogous to a contract made by a municipal corporation in its proprietary capacity. As such, it is governed by the same rules and should receive the

same construction as contracts between individuals. 38 Am.Jur., p. 177, "Municipal Corporations", sec. 502, "Construction and Operation" (express contracts). See also 30-A Tex.Jur., p. 456, "Municipal Corporations", sec. 440, "Implied Contracts".

The court erred in declining to admit the instrument in question in evidence. Had it been admitted, Blythe's prima facie case would have been established.

Judgment is reversed and the cause remanded.