# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-12-00648-CV

---

**City of Georgetown, Texas, Appellant**

**v.**

**Lower Colorado River Authority, Appellee**

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
### NO. D-1-GN-12-002982, HONORABLE TIM SULAK, JUDGE PRESIDING

---

## O P I N I O N

In this interlocutory appeal, appellant City of Georgetown (the City) challenges the trial court's order denying its plea to the jurisdiction based on governmental immunity. The underlying controversy concerns the City's long-term contract to purchase electricity from appellee, the Lower Colorado River Authority (the LCRA). The LCRA sought declaratory relief concerning the parties' rights and obligations under the contract, and the City filed a plea to the jurisdiction, asserting that the LCRA's pleadings fail to demonstrate a valid waiver of governmental immunity. Because we conclude that the City has no immunity from this suit, we affirm the trial court's order denying the City's plea to the jurisdiction.

## BACKGROUND

According to its pleadings, the LCRA entered into standard "Wholesale Power Agreements" with various municipalities, including the City, in 1974. Under the terms of the

Wholesale Power Agreement, the City would purchase 100% of its electricity from the LCRA and then resell that electricity to the City's retail customers through its municipal utility. The Wholesale Power Agreement is set to expire June 25, 2016, and the City has given LCRA notice of its intent not to renew the contract.

The LCRA asserts that on June 28, 2012, the City sent a letter to the LCRA in which it alleged that the LCRA had breached the terms of the Wholesale Power Agreement by selling electricity to other customers at a lower rate. According to the LCRA, the letter stated that the City would terminate the Wholesale Power Agreement within thirty days unless the LCRA cured the alleged breach. On August 13, 2012, the City sent a follow-up letter in which it declared that the Wholesale Power Agreement was terminated.

In response, the LCRA filed this underlying action, seeking a declaratory judgment that it has not materially breached the Wholesale Power Agreement.[1] The City filed a plea to the jurisdiction, asserting that the LCRA's pleadings fail to affirmatively demonstrate a waiver of the City's governmental immunity. In its amended pleadings, the LCRA asserts that the City has no governmental immunity because this case arises out of the City's proprietary function, rather than its governmental function. Alternatively, the LCRA asserts that if the City has governmental immunity, that immunity has been waived by statute. *See* Tex. Loc. Gov't Code § 271.152 (waiving sovereign immunity for breach of contract claims "subject to the terms and conditions of this

---

[1] The LCRA also sought injunctive relief "commanding [the City] to desist and refrain from taking any further action to prematurely terminate the [Wholesale Power Agreement]." The trial court did not rule on the LCRA's request for injunctive relief, and that claim is not part of this interlocutory appeal.

subchapter"). Following a hearing, the trial court denied the City's plea to the jurisdiction. This interlocutory appeal followed. *See* Tex. R. App. P. 51.014(a)(8) (permitting interlocutory appeal from denial of plea to jurisdiction).

## STANDARD OF REVIEW

A plea to the jurisdiction is a dilatory plea that challenges the trial court's authority to determine the subject matter of a specific cause of action. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000). Governmental immunity from suit deprives a court of subject-matter jurisdiction and therefore is properly asserted in a plea to the jurisdiction. *State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009). Whether a trial court has subject-matter jurisdiction is a question of law that we review de novo. *Westbrook v. Penley*, 231 S.W.3d 389, 394 (Tex. 2007). When, as here, the plea to the jurisdiction challenges the pleadings, we construe the pleadings liberally in favor of the plaintiff, and unless challenged with evidence, we accept all allegations as true. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004).

Some of the issues in this case concern interpretation of statutes, which is a question of law that we review de novo. *See First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631 (Tex. 2008). When construing a statute, our primary objective is to ascertain and give effect to the legislature's intent. *Id.* at 631–32. In determining legislative intent, we first consider the plain language of the statute. *GMC v. Bray*, 243 S.W.3d 678, 685 (Tex. App.—Austin 2007, no pet.). When statutory text is clear, it is determinative of legislative intent, unless enforcing the plain meaning of the statute's words would produce an absurd result. *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009). Our analysis of the statute is also informed by the

3

presumption that "the entire statute is intended to be effective" and that "a just and reasonable result is intended." Tex. Gov't Code § 311.021(2), (3). We may consider such matters as "the object sought to be attained," "the circumstances under which the statute was enacted," legislative history, and "common law or former statutory provisions, including laws on the same or similar subjects." *Id.* § 311.023(1)–(4).

## DISCUSSION

A municipality performs a governmental function when it acts "as the agent of the State in furtherance of general law for the interest of the public at large." *Gates v. City of Dallas*, 704 S.W.2d 737, 738–39 (Tex. 1986) (internal quotations omitted), *superseded by statute on other grounds as stated in City of Terrell v. McFarland*, 766 S.W.2d 809, 813 (Tex. App.—Dallas 1988, writ denied). Given that the municipality is effectively acting on behalf of the state when it performs a governmental function, it is imbued with the state's sovereign immunity, and therefore is entitled to governmental immunity.[2] *Id.* By contrast, "[p]roprietary functions are those functions performed by a city, in its discretion, primarily for the benefit of those within the corporate limits of the municipality." *Id.* Because the municipality is not acting on behalf of the state when it performs

---

[2] Courts frequently use the terms sovereign immunity and governmental immunity interchangeably, but the terms technically involve two distinct concepts. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003). "Sovereign immunity refers to the State's immunity from suit and liability," which extends to "the various divisions of the state government, including agencies, boards, hospitals, and universities. Governmental immunity, on the other hand, protects political subdivisions of the State, including counties, cities, and school districts." *Id.* (internal citations omitted). Although this distinction does not affect our analysis in this case, it is worth noting that when we refer to the City's immunity, or lack thereof, we are referring to governmental immunity. *See id.*

proprietary functions, the municipality traditionally is not entitled to governmental immunity for those functions, and thus has "the same duties and liabilities as those incurred by private persons or corporations." *Id.*; *see also Bailey v. City of Austin*, 972 S.W.2d 180, 192–93 (Tex. App.—Austin 1998, pet. denied) (concluding that city's provision of health insurance to its employees is proprietary function for which governmental immunity does not apply).

The LCRA asserts that when the City contracted to purchase power as a municipal utility, the City performed a proprietary function rather than a governmental function. *See* Tex. Civ. Prac. & Rem. Code § 101.0215(b)(1) (defining "operation or maintenance of a public utility" as proprietary function for purposes of Texas Tort Claims Act). Therefore, according to the LCRA, the City has no governmental immunity from this suit, which arises out of its operation of a municipal utility.

The City asserts that "the proprietary-governmental function dichotomy is a creature of tort law" that does not apply to contract claims. Specifically, the City argues that because section 271.152 of the Local Government Code—the statute that waives sovereign immunity for certain contract claims—does not mention the proprietary-governmental dichotomy, the legislature intended for the dichotomy not to apply to contract claims. Therefore, according to the City, municipalities have governmental immunity for contract claims regardless of whether the claim arises out of their proprietary or governmental functions. As a result, the City asserts that it has governmental immunity from LCRA's claims and that LCRA cannot demonstrate a clear and unambiguous waiver of the City's immunity. *See Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006) (noting that legislature must clearly and unambiguously waive sovereign immunity).

The arguments in this case primarily concern whether the proprietary-governmental dichotomy applies to contract claims. As we will explain, this issue involves two separate legal questions: (1) does the proprietary-governmental dichotomy apply to contract claims under the common law and (2) if so, has the legislature abrogated the common law? In making these determinations, we first discuss the history and underlying rationale for treating proprietary functions differently than governmental functions. Next, we consider whether the common law applies the proprietary-governmental dichotomy to contract claims. Finally, we determine whether the legislature has abrogated common-law precedent, thereby ending the application of the dichotomy to contract claims.

**History and rationale for proprietary-governmental dichotomy**

Texas has long recognized sovereign immunity as the bedrock principle that "'no state can be sued in her own courts without her consent, and then only in the manner indicated by that consent.'" *See Tooke*, 197 S.W.3d at 331 (quoting *Hosner v. DeYoung*, 1 Tex. 764, 769 (1847)). This immunity extends to the various divisions of the state government as well as its political subdivisions, such as the City. *See supra* n.2. "[G]overnmental immunity has two components: immunity from liability, which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether." *Tooke*, 197 S.W.3d at 332. When a governmental entity enters into a contract it "necessarily waives immunity from liability, . . . but it does not waive immunity from suit." *Id.* Thus, when governmental immunity applies, a governmental entity may not be sued for breach of contract unless its immunity from suit has been waived. *Id.* We defer to the legislature to waive immunity from suit by statute or resolution.

6

*Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 695–96 (Tex. 2003). The legislature's waiver of immunity from suit must be clear and unambiguous. *Tooke*, 197 S.W.3d at 332–33. These principles of immunity from suit and waiver of immunity are well established.

However, it is also well established that before a court considers whether governmental immunity has been waived, the court must determine whether governmental immunity exists in the first place. *See, e.g.*, *City of El Paso v. Heinrich*, 284 S.W.3d 366, 371–72 (Tex. 2009) (explaining that ultra vires claims are not against state and therefore do not implicate sovereign immunity). "[T]he distinction between waiving immunity and finding it nonexistent is a fine one that yields the same effect and, '[d]ue to the risk that the latter could become a ruse for avoiding the Legislature, courts should be very hesitant to declare immunity nonexistent in any particular case.'" *Nueces Cnty. v. San Patricio Cnty.* 246 S.W.3d 651, 652 (Tex. 2008) (quoting *City of Galveston v. Texas*, 217 S.W.3d 466, 471 (Tex. 2007)). Therefore, courts generally presume that governmental immunity applies. *See id.* With these principles in mind, we turn to the history of the proprietary-governmental dichotomy.

Over 125 years ago, the Texas Supreme Court considered the extent to which governmental immunity applies to municipalities. *City of Galveston v. Posnainsky*, 62 Tex. 118 (1884). In *Posnainsky*, a father sued a municipality for injuries resulting from his minor child's fall into an uncovered drain on a public street. *Id.* at 122–23. The court held that because the municipality constructed and maintained the streets for its "own advantage or emolument," it was not immune from suit for negligently maintaining those streets. *Id.* at 131. As the court explained, when a municipality "exercises powers exclusively public in their character, forced upon it without its

7

consent, simply because the state can thus, through such local agencies, more easily and effectively discharge duties essentially its own, it is but proper that no action should be maintained against" the municipality unless the state has waived immunity from suit. *Id.* at 125. However, when municipalities "exercise power not of this character, voluntarily assumed—powers intended for the private advantage and benefit of the locality and its inhabitants,—there seems to be no sufficient reason why they should be relieved from that liability to suit and measure of actual damage to which an individual or private corporation" would be held. *Id.*

*Posnainsky* established what has become the proprietary-governmental dichotomy. When a municipality exercises powers, public in nature, at the direction of the state, it performs a governmental function for which it has governmental immunity. But when a municipality acts within its discretion, primarily for the benefit of those within its corporate limits, it performs a proprietary function for which it has no immunity. *See Nueces Cnty.*, 246 S.W.3d at 652–53 (citing *Posnainsky*, 62 Tex. at 125).

The courts have traditionally been left to determine which municipal functions are proprietary and which are governmental. *See, e.g.*, *Gates*, 704 S.W.2d at 739. However, in 1987, the Texas Constitution was amended to give the legislature the authority to "define for all purposes those functions of a municipality that are to be considered governmental and those that are proprietary, including reclassifying a function's classification assigned under prior statute or common law." Tex. Const. art. XI, § 13(a). Thus, the legislature may, through statute, change the common-law classifications of municipal functions, effectively "grant[ing] municipalities immunity from certain suits that could have been maintained at common law." *City of Tyler v. Likes*, 962 S.W.2d 489, 503 (Tex. 1997).

The legislature has exercised its authority to reclassify proprietary functions as governmental functions almost exclusively in the Tort Claims Act.[3] *See* Tex. Civ. Prac. & Rem. Code § 101.0215; *see also Likes*, 962 S.W.2d at 502 (noting that Tort Claims Act reclassified maintenance of storm sewers as governmental function even though considered proprietary function at common law). As noted above, the Tort Claims Act specifically defines the "operation and maintenance of a public utility" as a proprietary function, thereby affirming its common-law classification, at least with respect to tort claims. *See* Tex. Civ. Prac. & Rem. Code § 101.0215(b)(1); *San Antonio Indep. Sch. Dist. v. City of San Antonio*, 550 S.W.2d 262, 264 (Tex. 1976) (noting that operation of public utility is proprietary function at common law).

**The common-law rule and *Tooke v. City of Mexia***

*Posnainsky* applied the proprietary-governmental dichotomy to a tort claim. *See* 62 Tex. at 125. Prior to *Tooke*, 197 S.W.3d at 343–44, the Texas appellate courts—including this Court—also unanimously applied the proprietary-governmental dichotomy to claims for contract damages. *See Bailey*, 972 S.W.2d at 192.[4] Although some of these opinions acknowledged that the

---

[3] The legislature has also specified that certain public operations and government agencies perform only governmental functions. *See, e.g.*, Tex. Transp. Code § 452.0561(b) (stating that operations of public transportation entity are governmental functions); Tex. Water Code § 67.0105(b) ("The furnishing of a water supply and fire hydrant equipment by a governmental entity or a volunteer fire department . . . is an essential governmental function . . . ."); Tex. Spec. Dist. Code § 3503.002(b) (stating that operations of "TexAmericas Center" are governmental functions for all purposes). The City's contract with the LCRA does not implicate any of these provisions, and therefore these statutes are not applicable to the case before us.

[4] *See also Temple v. City of Houston*, 189 S.W.3d 816, 819–20 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *City of Roman Forest v. Stockman*, 141 S.W.3d 805, 811 (Tex. App.—Beaumont 2004, no pet.); *City of Mexia v. Tooke*, 115 S.W.3d 618, 624–25 (Tex. App.—Waco 2003), *aff'd*, 197 S.W.3d 325, 347 (Tex. 2006); *Williams v. City of Midland*, 932

9

dichotomy was originally applied to tort claims, the opinions mostly assumed, without explanation, that "the dichotomy applies with equal force to contract claims." *See City of Mexia v. Tooke*, 115 S.W.3d 618, 624–25 (Tex. App.—Waco 2003), *aff'd*, 197 S.W.3d at 347.

However, the supreme court's opinion in *Tooke* has brought that uniform assumption into question. In *Tooke*, the supreme court stated that the "proprietary-governmental dichotomy has been used to determine a municipality's immunity from suit for tortious conduct . . . . [b]ut we have never held that this distinction determines whether immunity from suit is waived for breach of contract claims . . . ."[5] 197 S.W.3d at 343. The court explained that it "need not determine that

_____

S.W.2d 679, 683–84 (Tex. App.—El Paso 1996, no writ); *City of Houston v. Southwest Concrete Constr., Inc.*, 835 S.W.2d 728, 732–33 (Tex. App.—Houston [14th Dist.] 1992, writ denied); *City of Dallas v. Moreau*, 718 S.W.2d 776, 779–80 (Tex. App.—Corpus Christi 1986, writ ref'd n.r.e.); *International Bank of Commerce of Laredo v. Union Nat. Bank of Laredo*, 653 S.W.3d 539, 546 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.); *Blythe v. City of Graham*, 287 S.W.2d 527, 530 (Tex. App.—Fort Worth 1956, writ ref'd n.r.e.); *Boiles v. City of Abilene*, 276 S.W.2d 922, 925 (Tex. App.—Eastland 1955, writ ref'd); *City of Crosbyton v. Texas–New Mexico Util. Co.*, 157 S.W.2d 418, 420–21 (Tex. App.—Amarillo 1941, writ ref'd w.o.m.); *Texas One P'ship v. City of Dallas*, No. 05-92-01097-CV, 1993 WL 11621, at *3 (Tex. App.—Dallas Jan. 15, 1993, writ denied) (not designated for publication). The parties do not cite to, and we could not find, any cases from the Texarkana or Tyler Courts of Appeals applying or refusing to apply the proprietary-governmental dichotomy to a contract claim prior to *Tooke v. City of Mexia*, 197 S.W.3d at 343–44.

[5] Immediately following this sentence, the court in *Tooke* cited *Gates v. City of Dallas*, a previous supreme court opinion in which the court noted that "[c]ontracts made by municipal corporations in their proprietary capacity have been held to be governed by the same rules as contracts between individuals." *See Tooke*, 197 S.W.3d at 343 n.89 (citing *Gates*, 704 S.W.2d 737, 738–39 (Tex. 1986)). Given that the disposition in *Gates* appears to have required an application of the proprietary-governmental dichotomy to a contract claim, it is not entirely clear what the court in *Tooke* meant when it said, in dicta, that it had never held that the dichotomy applies to such claims. *See id.*; *see also City of San Antonio ex. rel. City Pub. Serv. Bd. v. Wheelabrator Air Pollution Control, Inc.*, 381 S.W.3d 597, 604 (Tex. App.—San Antonio 2012, pet. filed) (concluding *Tooke* brings *Gates* into question). Nevertheless, we will take at face value the supreme court's conclusion that it has never expressly held that the proprietary-governmental dichotomy applies to contract claims.

issue" because the case involved a governmental function, and thus, even assuming that the dichotomy applied, the municipality had governmental immunity. *Id.* Nevertheless, *Tooke* arguably called into question the vitality of the longstanding assumption that the proprietary-governmental dichotomy applies with equal force to contract claims as it does to tort claims. *See East Houston Estate Apartments, L.L.C. v. City of Houston*, 294 S.W.3d 723, 731–32 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (discussing appellate courts' post-*Tooke* treatment of proprietary-governmental dichotomy for contract claims). However, until the supreme court answers this question, we rely on this Court's precedent, as well as the nearly unanimous opinions of our sister courts, to conclude that the proprietary-governmental dichotomy applies to contract claims under the common law.

Prior to *Tooke*, the appellate courts unanimously applied the proprietary-governmental dichotomy to contract claims. *See supra* n.3. Following *Tooke*, several appellate courts, including this Court, have assumed without deciding that the dichotomy continues to apply to contract claims. *See, e.g.*, *East Houston Estate Apartments, L.L.C.*, 294 S.W.3d at 731–32; *Smith v. City of Blanco*, No. 03-08-00784-CV, 2009 WL 3230836, at *3 (Tex. App.—Austin Oct. 8, 2009, no pet.) (mem. op.). At least one of our sister courts has continued to expressly apply the proprietary-governmental dichotomy to contract claims post-*Tooke*. *See Casso v. City of McAllen*, No. 13-08-00618, 2009 WL 781863, at *5–7 (Tex. App.—Corpus Christi Mar. 26, 2009, pet. denied) (mem. op.) (concluding municipality's provision of health insurance to its employee is proprietary function for which it had no immunity from contract claim). These opinions did not engage in substantial analysis of why the dichotomy was equally applicable to contracts, perhaps because they did not think such analysis was necessary.

11

Although *Tooke* brought this issue into question, it did not suggest, and we have not found, any principled reason why the proprietary-governmental dichotomy should apply to tort claims but not contract claims under the common law.[6] *See* 197 S.W.3d at 343–44. Without such a principled reason or guidance from the supreme court, we are reluctant to overturn our own precedent or disagree with persuasive authority from the majority of our sister courts on the issue. *See Grapevine Excavation, Inc. v. Maryland Lloyds*, 35 S.W.3d 1, 5 (Tex. 2000) ("Adhering to precedent fosters efficiency, fairness, and legitimacy."); *see also Bailey*, 972 S.W.2d at 192; *supra* n.3. The proprietary-governmental dichotomy exists because we have determined that when a municipality does not act on behalf of the state, it is not imbued with the state's immunity. Thus, the underlying rationale for the dichotomy is the relationship, or lack thereof, between the municipality and the state, not the relationship between the municipality and the party bringing suit. *See Posnainsky*, 62 Tex. at 126–128.

In its brief, the City primarily relies on the San Antonio Court of Appeals' recent holding in *City of San Antonio ex. rel. City Public Service Board v. Wheelabrator Air Pollution Control, Inc.*, 381 S.W.3d 597, 603–05 (Tex. App.—San Antonio 2012, pet. filed). In that case, the court held that the legislature's failure to include the proprietary-governmental dichotomy in

---

[6] The City argues that we should be hesitant to conclude that governmental immunity does not exist in this context because such arguments can be used as a "ruse" to circumvent the legislature. *See Nueces Cnty. v. San Patricio Cnty.*, 246 S.W.3d 651, 652 (Tex. 2008). While we agree that courts should not make this determination lightly, the proprietary-governmental dichotomy has existed for over 125 years and has been applied to contract claims for at least 70 years. *See City of Galveston v. Posnainsky*, 62 Tex. 118 (1884); *City of Crosbyton*, 157 S.W.2d at 420–21. Therefore, we disagree with the City's assertion that applying the proprietary-governmental dichotomy to contract claims is a ruse to avoid the legislature; rather, it is a reasonable application of jurisprudence that is nearly as old as the state itself. *See Posnainsky*, 62 Tex. at 127–28.

12

"the contract-claim scheme" meant that the dichotomy did not apply. *Id.* at 605. In reaching this conclusion, the court did not expressly state whether the legislature abrogated the common-law rule that would have applied the dichotomy to contract claims. However, the court noted that *Tooke* brought *Gates*—a previous supreme court opinion that applied the proprietary-governmental dichotomy to a contact claim—into question because *Tooke* "used a compare signal when citing *Gates* right after explicitly stating it has never held that the proprietary/governmental distinction applies to determine whether immunity is waived for breach of contract claims . . . ." *Wheelabrator*, 381 S.W.3d at 604 (citing *Tooke*, 197 S.W.3d at 343 n.89). To the extent *Wheelebrator*'s analysis suggests that *Tooke* changed the common law, we respectfully disagree.

We agree that *Tooke*'s citation to *Gates* could be read to mean that *Gates* did not expressly hold that the proprietary-governmental dichotomy applies to contract claims, and thus there is no binding precedent from the supreme court that answers this question. *See supra* n.4. Nevertheless, we do not agree with *Wheelebrator*'s intimation that *Tooke* changed the common law or somehow called the holding of *Gates* into question. By its own terms, *Tooke* assumed without deciding that the proprietary-governmental dichotomy applied to contract claims and therefore did not overrule any prior precedent. *See* 197 S.W.3d at 343. Furthermore, the underlying analysis in *Tooke* primarily concerned whether the phrase "plead and be impleaded" within the local government code was a clear and unambiguous waiver of sovereign immunity. *See id.* at 342–43. As we have explained, the proprietary-governmental dichotomy concerns whether a municipality has governmental immunity in the first place, not whether that immunity has been waived. Therefore, *Tooke*'s analysis of waiver of immunity has little bearing on the proprietary-governmental

13

dichotomy, and the more relevant precedents are those cases addressing whether governmental immunity exists in the first instance. *See, e.g.*, *Heinrich*, 284 S.W.3d at 371–72; *Nueces Cnty.* 246 S.W.3d at 652–53.

For the foregoing reasons, we adhere to our precedent and conclude that the proprietary-governmental dichotomy does apply to contract claims under the common law. *See Bailey*, 972 S.W.2d at 192. Having made this determination, we next consider whether the legislature has abrogated that common-law rule.

**Legislative intent**

In its brief, the City argues that the legislature's failure to expressly adopt the propriety-governmental dichotomy for contract claims indicates that the dichotomy does not apply. As we have noted, the legislature has the authority to reclassify a municipality's functions as either proprietary or governmental, thereby abrogating their common-law classifications. *See* Tex. Const. art. XI, § 13(a). The legislature has exercised this authority almost exclusively in the Tort Claims Act, in which it provided non-exhaustive lists of proprietary and governmental functions. *See* Tex. Civ. Prac. & Rem. Code § 101.0215; *supra* n.3. Section 271.152 of the Local Government Code—the section that waives local governmental entities' immunity from suit for certain contract claims—does not reference the proprietary-governmental dichotomy. Given that chapter 271 does not mention the proprietary-governmental dichotomy in any respect, there is no plain statutory text from which we can determine whether the legislature intended to abandon the dichotomy for contract claims.

14

The City asserts that we should take the legislature's silence to mean that the proprietary-governmental dichotomy no longer applies to contract claims. The City again relies on the analysis in *Wheelebrator*, in which the San Antonio Court of Appeals stated the following:

> The Legislature easily could have included the proprietary/governmental dichotomy it used in the tort-claims context in the contract-claim scheme, but chose not do so. As it is solely the Legislature's role to clearly and unambiguously waive governmental immunity from suit, and it has not done so for quantum meruit claims, we hold [the municipality] is immune from suit on Wheelebrator's quantum meruit claim.

See 381 S.W.3d at 605 (internal quotation omitted). Because we conclude that this analysis incorrectly places the burden on the legislature to affirmatively adopt the common-law rule, we respectfully disagree.

We are mindful of the fact that although "silence can be significant . . . . legislatures do not always mean to say something by silence. Legislative silence may be due to mistake, oversight, lack of consensus, implied delegation to courts or agencies, or an intent to avoid unnecessary repetition." *PPG Indus., Inc. v. JMB/Houston Ctr. Partners Ltd. P'ship*, 146 S.W.3d 79, 84 (Tex. 2004). Therefore, in order to give effect to the legislature's intent, we must utilize other tools of statutory construction. *See* Tex. Gov't Code § 311.023. In particular, we consider the common law's treatment of the proprietary-governmental dichotomy prior to the adoption of section 271.152, as well as the legislative history and purpose behind that section's adoption. *See id.* § 311.023(3)–(4); Tex. Loc. Gov't Code § 271.152.

Section 271.152 was signed into law on June 17, 2005, just over one year before the supreme court issued its opinion in *Tooke*. *See* Act of May 23, 2005, 79th Leg., R.S., ch. 604, §§ 1–2, 2005 Tex. Gen. Laws 1548, 1549; *see also Tooke*, 197 S.W.3d at 325. At the time the legislature considered and adopted section 271.152, the appellate courts unanimously applied the proprietary-governmental dichotomy to contract claims in the same manner that they applied the dichotomy to torts. *See supra* n.3. We presume that the legislature was aware of the state of the common law when it adopted section 271.152. *See Shook v. Walden*, 304 S.W.3d 910, 917 (Tex. App.—Austin 2010, no pet.). The legislature did not express any disagreement with that precedent; therefore we presume that the legislature did not intend to abrogate the common law. *See Cash Am. Int'l Inc. v. Bennett*, 35 S.W.3d 12, 16 (Tex. 2000) ("Abrogating common-law claims is disfavored and requires clear repugnance between the common law and statutory causes of action.") (internal quotations omitted). Furthermore, although the legislature could have repeated the list of proprietary and governmental functions from the Tort Claims Act in some part of chapter 271 of the Local Government Code, it could have reasonably concluded that such repetition was unnecessary. *See* Tex. Civ. Prac. & Rem. Code § 101.0215; *PPG Indus., Inc.*, 146 S.W.3d at 84 (noting legislative silence may indicate intent to avoid unnecessary repetition); *see also Tooke*, 197 S.W.3d at 343–44 (concluding that there is "no reason to think that the classification [of proprietary and governmental functions] would be different under the common law.").

Similarly, the history behind section 271.152 indicates that it was adopted to expand, rather than limit, plaintiffs' ability to sue municipalities for contract damages. As section 271.158 of the Local Government Code makes clear, nothing in section 271.152 "shall constitute a grant

of immunity to suit to a local governmental entity." This is consistent with the bill analysis for section 271.152, which states that it "clarifies and re-expresses the legislature's intent that all local governmental entities that are given the statutory authority to enter into contracts shall not be immune from suits arising from contracts, subject to the limitations set forth in C.S.H.B. 2039." House Comm. On Civil Practices, Bill Analysis, Tex. H.B.2039, 79th Leg., R.S. 2005. Thus, the legislative history strongly indicates that section 271.152 was adopted to expand—or at a minimum not reduce—access to the courthouse.[7] It would be entirely inconsistent with this purpose to treat section 271.152 as an abrogation of the proprietary-governmental dichotomy for contract claims. *See Likes*, 962 S.W.2d at 503 (noting that when legislature reclassifies proprietary function as governmental function, it expands governmental immunity beyond common law).

Finally, as we have explained, the proprietary-governmental dichotomy concerns whether governmental immunity exists in the first place, not whether it has been waived. Therefore, the statutory provision that waives governmental immunity in chapter 271 does not logically implicate the proprietary-governmental dichotomy, which applies before consideration of waiver. As a result, the legislature could have reasonably believed it did not need to reiterate the validity of the dichotomy in section 271.152. This interpretation is directly supported by section 271.158, in which the legislature expressly stated that nothing in section 271.152 "shall constitute a grant of immunity to suit to a local governmental entity."

---

[7] As our sister court explained, section 271.152 was adopted to overrule various appellate court cases that found that governmental entities' immunity from suit had not been waived for various contract claims. *See Clear Lake City Water Auth. v. MCR Corp.*, No. 01-08-00955-CV, 2010 WL 1053057, at *9 n.6 (Tex. App.—Houston [14th Dist.] March 11, 2010, pet. denied) (mem. op.).

Therefore, we find that *Wheelebrator*'s interpretation of the legislature's silence is inconsistent with legislative history and the purpose of section 271.152. We conclude that the legislature did not intend section 271.152 to abrogate the common law's treatment of the proprietary-governmental dichotomy. Having concluded that the common law applies that dichotomy to contract claims, and that the operation of a municipal utility is a proprietary function, we further conclude that the City was acting in its proprietary capacity when it entered into its contract with the LCRA. *See* Tex. Civ. Prac. & Rem. Code § 101.0215(b)(1) (listing operation and maintenance of municipal utility as proprietary function); *Tooke*, 197 S.W.3d at 344 (using classification of municipal function in Tort Claims Act in application to contract claim). Therefore, the City has no governmental immunity from the LCRA's claims, and the trial court did not err in denying the City's plea to the jurisdiction on this basis.[8]

## CONCLUSION

We affirm the trial court's order denying the City's plea to the jurisdiction.

_____

Scott K. Field, Justice

Before Chief Justice Jones, Justices Goodwin and Field
   Dissenting Opinion by Justice Goodwin

Affirmed

Filed:   August 23, 2013

_____

[8] Having concluded that the City has no governmental immunity, we need not address the LCRA's alternative argument that the City's immunity has been waived.