ACCEPTED
06-15-00021-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
8/26/2015 4:12:16 PM
DEBBIE AUTREY
CLERK

**CASE NO. 06-15-00021-CV**

**IN THE COURT OF APPEALS
SIXTH APPELLATE DISTRICT
STATE OF TEXAS**

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

8/26/2015 4:12:16 PM

DEBBIE AUTREY
Clerk

_____

**SIDNEY B. HALE, JR.**

**Defendant – Appellant**

**v.**

**CITY OF BONHAM**

**Plaintiff – Appellee**

_____

**On Appeal from the 336th Judicial District Court of Fannin County, Texas
Cause No. CV-14-41722**

_____

**APPELLANT'S REPLY BRIEF**

_____

**COATS & EVANS, P.C.**
Gary Linn Evans
State Bar No. 00795338
E-mail: evans@texasaviationlaw.com
George Andrew Coats
State Bar No. 00783846
E-mail: coats@texasaviationlaw.com
P.O. Box 130246
The Woodlands, Texas  77393-0246
Telephone:  (281) 367-7732
Facsimile:  (281 367-8003

**ORAL ARGUMENT REQUESTED**

i

# TABLE OF CONTENTS

TABLE OF CONTENTS…………………………………………….………ii

INDEX OF AUTHORITIES…………………………………….…………iii

ISSUES ADDRESSED IN APPELLANT'S REPLY BRIEF…………………..v

STATEMENT OF FACTS………………………………………….………1

SUMMARY OF THE ARGUMENT……………………………….………3

ARGUMENT……………………………………………………….5

    I.    THE LEGISLATURE CANNOT PROVIDE A WAIVER
        OF IMMUNITY WHERE NO IMMUNITY EXISTS…….…...……..5

    II.    THE PROPRIETARY-GOVERNMENTAL DICHOTOMY
        SHOULD BE APPLIED TO MR. HALE'S CONTRACTUAL
        AND QUASI-CONTRACTUAL CLAIMS………………………...7

    III.    THE CITY IS NOT IMMUNE FROM CLAIMS ARISING
        OUT OF ITS PROPRIETARY FUNCTIONS………………....…..10

CONCLUSION………………………………………………...12

PRAYER……………………………………………….…14

CERTIFICATE OF COMPLIANCE………………………………...15

CERTIFICATE OF SERVICE……………………………………16

# INDEX OF AUTHORITIES

## CASES

*City of Crystal City v. Crystal City Country Club*, 486 S.W.2d 887 (Tex. Civ. App.—Beaumont 1972, writ ref'd n.r.e.)……………………………10, 11

*City of Galveston v. Posnainsky*, 62 Tex. 118 (1884)…………………………….10

*City of Georgetown v. Lower Colorado River Authority*, 413 S.W.3d 803 (Tex.App.—Austin 2013, pet. dism'd)..……………………….....6, 7, 8, 9, 10

*City of San Antonio v. Wheelabrator Air Pollution Control, Inc.*, 381 S.W.3d 597 (Tex.App.—San Antonio 2012, pet. denied)………..…..……..8

*City of Texarkana v. City of New Boston*, 141 S.W.3d 778 (Tex. App.—Texarkana 2004, pet. denied)……………………………………………12

*Cont. Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444 (Tex. 1996)………………...1

*East Houston Estate Apartments, LLC v. City of Houston*, 294 S.W.3d 723 (Tex.App.—Houston [1st Dist.] 2009, no pet.)……………………………...8

*Gates v. City of Dallas*, 704 S.W.2d 737 (Tex. 1986)……………………..………7, 9

*Gay v. City of Wichita Falls*, 457 S.W.3d 499, 507 (Tex. App.—El Paso, 2014, no pet.)………………………………………………...6

*Tooke v. City of Mexia*, 197 S.W.3d 325 (Tex. 2006)………………….....6, 7, 8, 9

*Truong v. City of Houston*, 99 S.W.3d 204 (Tex. App.—Houston [1st Dist.] 2002, no pet.)……………………………………………………11

*Turvey v. City of Houston*, 602 S.W.2d 517 (Tex. 1980)……………………..11, 12

**STATUTES**

Tex. Loc. Gov't Code §271.151(2)(A)…………………………………………..………5

Tex. Loc. Gov't Code §271.152……………………………………………...……..5

iv

## ISSUES ADDRESSED IN APPELLANT'S REPLY BRIEF

I. The Trial Court committed reversible error by failing to find that the City was performing proprietary functions, and thus, a Legislative wavier of immunity is not necessary because no immunity exists.

II. The Trial Court committed reversible error by failing to find that the proprietary-governmental dichotomy applies to Appellant's contractual and quasi-contractual claims.

III. The Trial Court committed reversible error by holding that the City has sovereign immunity from suit for claim arising out of its proprietary functions.

# STATEMENT OF FACTS[1]

TO THE HONORABLE JUDGES OF THE COURT OF APPEALS:

Plaintiff is the owner of a hangar on the grounds of the City of Bonham Airport (the "Hangar"). (CR 1:59). On or about June 18, 1984, Mr. Hale entered into a lease agreement with the City for the Hangar (the "Lease"). (CR 1:59; 12-13). The Lease, by its own terms, expired after five years. *Id*.

On or about December 8, 2013, the Hangar roof collapsed, causing extensive damages to the hangar and the property contained therein (the "Incident"). (CR 1:59). The Hangar was used to conduct Mr. Hale's aircraft repair and maintenance business and to store multiple aircraft. (CR 1:59).

Prior to the Incident, Mr. Hale informed the City of the observed and deteriorating condition of the hangar. (CR 1:59). The City, specifically Mr. Ronnie Ford on behalf of the City, unequivocally instructed Mr. Hale to immediately vacate the premises and to stay out of the Hangar. (CR 1:59; RR 2:19). There was a significant likelihood that had the center section of the structure been supplementally supported at that time, the Hangar would not have collapsed. (CR 1:59). Indeed, it was not until much, much later, after the City's failure to act, that the Hangar collapsed. (CR 1:59). Such action represents an assumption of

---

[1] Mr. Hale's counterclaims were dismissed pursuant to what is essentially a Plea to the Jurisdiction. As a result, the merits of Mr. Hale's counterclaims were not reached by the trial court. No discovery was conducted during the trial court proceedings. In reviewing the plea to the jurisdiction, the court must take all factual allegations plead by Mr. Hale as true. *Cont. Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 449 (Tex. 1996).

1

complete command and control over the premises, to the complete and total exclusion of all other persons and entities. (CR 1:59). The City's failure to reasonably protect the Hangar from further collapse caused the damages incurred by Mr. Hale, at least in part. (CR 1:59).

Additionally, the City barred Mr. Hale from the property, which was saturated with ice and water, for many weeks, during which all sorts of damage was done to his personal property, including sensitive aviation tools, parts, gauges, servicing equipment, inventory, and tooling. (CR 1:59).

Following the Incident, an examination of the debris revealed that the apex bolts that held the top seam of the roof together were extensively corroded, undersized, and apparently had not been inspected in decades, making the hangar unsafe for occupancy and/or use. (CR 1:59-60). This presented an unreasonably dangerous condition which posed an unreasonable risk of harm to Mr. Hale. (CR 1:60). The City was aware of this condition, yet did nothing to make the premises safe. (CR 1:60).

## SUMMARY OF THE ARGUMENT

Mr. Hale brought several causes of action against the City in his Original Counterclaim, including tort claims, contractual claims and quasi-contractual claims. The trial court below improperly dismissed all of Mr. Hale's claims on the basis that the City was afforded sovereign immunity from Mr. Hale's claims. The conduct at issue in the present case is based on the City's proprietary functions, rather than governmental functions. As a result, the statutes relied upon by the City, including the Texas Tort Claims Act and Chapter 271 of the Texas Local Government Code, are inapplicable. The proprietary nature of the City's conduct takes Mr. Hale's claims outside the realm of the statutes relied upon by the City. In other words, a statutory waiver of sovereign immunity is not required under the facts of this case, because the City was never afforded immunity under the facts of this case.

The City, in conducting real estate operations of owning, managing, and leasing real property was performing proprietary functions. A municipality is not afforded the protection of sovereign immunity for matters arising from the performance of their proprietary functions. The governmental functions of a municipal corporation have been defined as those acts which are public in nature and performed by the municipality "as the agent of the State in furtherance of general law for the interest of the public at large." Proprietary functions, on the

3

other hand, are those functions performed by a city, in its discretion for its own advantage or emolument, primarily for the benefit of those within the corporate limit of the municipality.

Alternatively, Mr. Hale requested that the trial court allow sufficient opportunity for discovery and the opportunity to amend his counterclaims before ruling on the City's motions. Mr. Hale's request was denied by the trial court, which constitutes reversible error. If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend.

Consequently, Mr. Hale respectfully requests that this Court find that the City was acting in a proprietary capacity, and as such, is not protected from suit by sovereign immunity. Mr. Hale further requests that that the orders of the trial court dismissing Mr. Hale's counterclaims be reversed and the case remanded to the trial court for a trial on the merits. Alternatively, or in addition, to the requested relief, Mr. Hale respectfully requests that the case be remanded to the trial court for discovery and to allow Mr. Hale an opportunity to amend his counterclaims to include additional facts to affirmatively demonstrate the trial court's jurisdiction.

## ARGUMENT

### I. THE LEGISLATURE CANNOT PROVIDE A WAIVER OF IMMUNITY WHERE NO IMMUNITY EXISTS.

Subchapter I of Chapter 271 of the Texas Local Government Code is inapplicable under the facts of the present case. The waiver of immunity found in Section 274.152 does not narrow the scope of contract claims that could be filed against cites, but rather broadens the claims that may be brought regardless of whether the city is engaged in proprietary or governmental functions. In other words, whether a city is engaged in proprietary functions or governmental functions need not be decided if the contract at issue is for "providing goods or services to the local governmental entity." *See* Tex. Loc. Gov't Code §271.151(2)(A). But for all other contracts, the proprietary v. governmental function determination must be made. Immunity has never applied to contracts involving the proprietary function of a governmental entity. Thus, it is not necessary for Chapter 271 to specifically waive immunity because immunity has never applied, i.e., when a city engages in a proprietary function.

When the City entered into the Lease with Mr. Hale, the City was engaged in a proprietary function, and thus no immunity against Mr. Hale's contractual and quasi-contractual claims exists. Here, the City was engaged in a proprietary function in the ownership and leasing of real estate, and thus, immunity does not apply. (RR 2:11). The City's real estate endeavors are separate and distinct from its

5

operations of Jones Field Municipal Airport. The Lease Agreement in this case is particularly instructive in this regard in that Mr. Hale leased the property at issue directly from The City of Bonham, rather than the Airport itself (the City of Bonham Municipal Airport, also known as Jones Field). (CR 1:12-13).

Appellee is correct that courts presume that the "Legislature deliberately and purposefully selects words and phrases it enacts, as well as deliberately and purposefully omits words and phrases it does not enact." *Gay v. City of Wichita Falls*, 457 S.W.3d 499, 507 (Tex. App.—El Paso, 2014, no pet.). In applying that presumption to Chapter 271, it logically follows that the Legislature deliberately and purposefully omitted any waiver of immunity for claims involving the proprietary functions of a governmental entity because there is no immunity to waive, nor has there ever been. It is illogical to presume that a statute intended to broaden the scope of contract claims that can be brought against a municipality, would at the same time, completely abolish an entire class of claims which have never been subject to immunity. (RR 2:16-17).

Prior to *Tooke v. City of Mexia*, 197 S.W.3d 325 (Tex. 2006), the appellate courts unanimously held that immunity does not apply to contract claims involving a municipality's proprietary function. *City of Georgetown v. Lower Colorado River Authority*, 413 S.W.3d 803, 811 (Tex.App.—Austin 2013, pet. dism'd) (*internal citations omitted*). *Tooke* does not change that precedent. Rather, *Tooke*, by its own

6

terms, assumed without deciding that the proprietary-governmental dichotomy applied to contract claims and therefore, did not overrule any prior precedent. *Id*. at 812; *Tooke*, 197 S.W.3d at 343. *Gates v. City of Dallas* (704 S.W.2d 737 (Tex. 1986)), whereby the Supreme Court of Texas recognized that contracts made by municipal corporations in their proprietary capacity have been held to be governed by the same rules as contracts between individuals, has not been overturned and still constitutes good law. *See* 704 S.W.2d at 739.

This Court should follow the Third Court of Appeals, which held, post-*Tooke*, that in the absence of a definitive answer from the Supreme Court, the Court would rely on its own precedent, as well as the nearly unanimous opinions of its sister courts, to conclude that the proprietary-governmental dichotomy applies to contract claims. *City of Georgetown*, 413 S.W.3d at 810-11.

**II.  THE PROPRIETARY-GOVERNMENTAL DICHOTOMY SHOULD BE APPLIED TO MR. HALE'S CONTRACTUAL AND QUASI-CONTRACTUAL CLAIMS**

Contracts made by municipal corporations in their proprietary capacity have been held to be governed by the same rules as contracts between individuals. *Gates*, 704 S.W.2d at 739. In *Tooke,* the Supreme Court recognized that a municipality is not immune from suit for torts committed in the performance of its proprietary functions, as it is for torts committed in the performance of its government functions. 197 S.W.3d at 343. Additionally, while the Court indicated

7

that they have not held that the same distinction determines whether immunity was waived in suits involving breach of contract claims, the Court also did not indicate that the distinction ***does not*** apply. *Id*. Rather, the Court determined that it was not necessary to make that determination based on the facts presented in *Tooke*. Indeed, the Court held that, "even if the City were not immune from suit for breach of a contract whose subject lies within its proprietary functions, the Tooke's contract does not qualify." *Id*. at 344. This leaves the door open for the Court to make that determination at a later date.

To date, the Supreme Court has not yet revisited whether or not the proprietary-governmental dichotomy applicable in tort cases is also applicable in breach of contract cases. While the Fourth Court of Appeals in San Antonio has held that this distinction does not apply in contract cases, the decisions of that Court are persuasive only and certainly not binding on the present court. *See City of San Antonio v. Wheelabrator Air Pollution Control, Inc.*, 381 S.W.3d 597 (Tex.App.—San Antonio 2012, pet. denied). Conversely, the majority of appellate courts continue to apply the proprietary-governmental dichotomy to contract claims. *See, e.g., East Houston Estate Apartments, LLC v. City of Houston*, 294 S.W.3d 723, 731-32 (Tex.App.—Houston [1st Dist.] 2009, no pet.); *City of Georgetown*, 413 S.W.3d at 811.

8

As the case law currently stands, there is no authority mandating that this Court find that the proprietary-governmental function distinction does not apply in the present case. In fact, *Gates*, which is still good law (and binding on this Court), mandates the exact opposite. In *Gates*, the Supreme Court recognized that contracts made by municipal corporations in their proprietary capacity have been held to be governed by the same rules as contracts between individuals, *Gates*, 704 S.W.2d at 739. Neither *Tooke*, nor the enactment of Chapter 271 changes the ruling in *Gates*. While *Tooke's* citation to *Gates* could be read to mean that *Gates* did not expressly hold that the proprietary-governmental dichotomy applies to contract claims, and therefore constitute binding authority, *Tooke* did not change the common law or somehow call the holding of *Gates* into question. *Id*. at 812. Mr. Hale urges the Court in the present case to adopt the holding in the *City of Georgetown*, finding that the proprietary-governmental dichotomy applies in contractual and quasi-contractual claims against a municipality.

The proprietary-governmental dichotomy exists because when a municipality does not act on behalf of the state, ***it does not have the state's immunity***. *City of Georgetown*, 413 S.W.3d at 811 [emphasis added]. In the present case, the City's real estate endeavors of owning and leasing real property have no relationship with the state and are thus, proprietary in nature. This real

9

estate function of the City is separate and distinct from its operation of the Airport and cannot be considered governmental.

Indeed, the operation of an airport consists of the operation and management of the runways and related facilities, with or without an air traffic control tower. (RR 2:11). The additional endeavor of real estate ownership, leasing and management is not a necessary function of an airport, nor is it a function mandated by the State in the operation of an airport. (RR 2:11). The real estate functions of the City demonstrate the very definition of proprietary functions. The real estate functions constitute an "exercise of power . . . voluntarily assumed—powers intended for the private exchange and benefit of the locality and its inhabitants," as such there is no sufficient reason why it should be relieved from liability to suit and measure of actual damage to which an individual or private corporation would be held. *City of Galveston v. Posnainsky*, 62 Tex. 118, 125 (1884); *see also City of Georgetown*, 413 S.W.3d at 808-09.

### III. THE CITY IS NOT IMMUNE FROM CLAIMS ARISING OUT OF ITS PROPRIETARY FUNCTIONS.

The governmental functions of a municipal corporation have been defined as those acts which are public in nature and performed by the municipality "***as the agent of the State*** in furtherance of general law for the interest of the public at large." *City of Crystal City v. Crystal City Country Club*, 486 S.W.2d 887, 889 (Tex. Civ. App.—Beaumont 1972, writ ref'd n.r.e.) [emphasis added]. Proprietary

10

functions are those functions performed by a city, *in its discretion*, primarily for the benefit of those within the corporate limit of the municipality. *Id.* [emphasis added]. The key difference between a proprietary and governmental function is that the city functions in its governmental capacity when it performs functions mandated by the State. *Truong v. City of Houston*, 99 S.W.3d 204, 210 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

Here, the City *voluntarily* engaged in the business of owning and leasing real estate in and around the Airport. (RR 2:11). This "real estate" aspect of the City is not a necessary component to the operation of the Airport and is not a function mandated by the State, but rather a separate and distinct endeavor, and thus, is purely and completely a proprietary function. (RR 2:11).[2] The trial court's cumulative errors commenced with its failure to respect this basic attribution of what the City does in and around the Airport. The Lease Agreement in this case is particularly instructive in this regard in that Mr. Hale leased the property at issue directly from The City of Bonham, rather than the Airport itself (the City of Bonham Municipal Airport, also known as Jones Field). (CR 1:12-13).

Unlike governmental functions, for which municipal corporations have traditionally been afforded some degree of governmental immunity, proprietary

---

[2] Appellee points out a mistake in Appellant's Response to the City's Motion for Partial Summary Judgment, despite the fact that this mistake was addressed during both oral hearings on the City's Motions. Mr. Hale has at all times maintained that the real estate endeavors of the City are separate and distinct from its operation of the Airport and are proprietary in nature. *See* RR 2:24-25.

functions have subjected municipal corporations *to the same duties and liabilities as those incurred by private persons and corporations*. *See Turvey v. City of Houston*, 602 S.W.2d 517 (Tex. 1980) [emphasis added]. While the doctrine of governmental immunity protects municipalities from being sued for matters arising from the performance of their governmental functions, *no such protection exists for municipalities performing their proprietary functions*. *City of Texarkana v. City of New Boston*, 141 S.W.3d 778, 783 (Tex. App.—Texarkana 2004, pet. denied) [emphasis added]. Here, the City's ownership, lease, and management of real estate properties on the Airport property are voluntarily assumed powers intended for the private exchange and benefit of its inhabitants. (CR 2:11). Thus, these real estate functions of the City are proprietary in nature and not subject to sovereign immunity.

## CONCLUSION

When Mr. Hale informed the City of the unreasonable and unsafe condition of the hangar, the City, specifically Mr. Ronnie Ford on behalf of the City, unequivocally instructed Mr. Hale to immediately vacate the premises and to stay out of the Hangar. (CR 1:59; RR 2:19). Not only did the City forbid Mr. Hale from taking any action to protect his property from the unreasonable risk of harm posed by the deteriorated roof, the City did absolutely nothing to reduce or eliminate the risk of harm to Mr. Hale. (CR 1:59). Mr. Hale was not afforded an opportunity to

12

remove his aircraft and personal property from the hangar until the destruction of his personal property and work tools was essentially complete. (CR 1:59). The City assumed complete command and control over the property when they ejected Mr. Hale and all other occupants from the property. (CR 1:59). The City then barred Mr. Hale from re-entering the property for weeks, allowing not only aircraft, but sensitive aircraft grade equipment and tools to be exposed to the elements, resulting in damage or a complete loss. (CR 1:59).

Not only is the City subject to suit and liability for its actions as a landlord generally, even the early state of the record in this case reveals that it ejected Mr. Hale from his property after its condition had been brought to the City's attention, and then the City, after assuming complete control over the premises, stood idly by and watched as the Quonset hut type of hangar that it leased to Mr. Hale collapse, destroying over a hundred thousand dollars of aircraft and aircraft related equipment and tooling. (CR 1:59). The City then expects to escape all liability by asserting judicial immunity for such careless and reckless acts. The law cannot allow such an improvident and bizarre result as what the City seeks.

To allow the City to avoid suit and/or liability for the egregious conduct demonstrated in the present case goes against the spirit and intent of the doctrine of governmental immunity. A City should not be allowed to voluntarily take on proprietary functions, operate with conscious indifference to the rights, safety, or

13

welfare of others, and then escape all responsibility and liability due to its tenants (and the public) under the doctrine of immunity. Indeed, the doctrine of sovereign immunity does not give the City, or any other governmental unit, a "free pass" to ignore its duties and obligations under the law and escape all responsibility for its actions. Consequently, the trial court's application of sovereign immunity to Mr. Hale's claims should be reversed and remanded for a trial on the merits.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, and as a result of the foregoing, Mr. Hale respectfully requests that this Court find that the City was acting in a proprietary capacity, and as such, is not protected from suit by sovereign immunity. Mr. Hale further requests that that the orders of the trial court dismissing Mr. Hale's counterclaims be reversed and the case remanded to the trial court for a trial on the merits. Alternatively, or in addition, to the requested relief, Mr. Hale respectfully requests that the case be remanded to the trial court for discovery and to allow Mr. Hale an opportunity to amend his counterclaims to include additional facts to affirmatively demonstrate the trial court's jurisdiction. Mr. Hale further requests all such other and further relief, general or special, at law or in equity, to which he may be justly entitled.

Respectfully submitted,

**COATS &EVANS, P.C.**

By: /s/ *Gary L. Evans*
      Gary Linn Evans
      State Bar No. 00795338
      E-mail: evans@texasaviationlaw.com
      George Andrew Coats
      State Bar No. 00783846
      E-mail: coats@texasaviationlaw.com
      P.O. Box 130246
      The Woodlands, Texas 77393-0246
      Telephone: (281) 367-7732
      Facsimile: (281 367-8003

**ATTORNEYS FOR APPELLANT
SIDNEY B. HALE, JR.**

## CERTIFICATE OF COMPLIANCE

I certify that this document was produced on a computer using Microsoft Word and contains 3,345 words, as determined by the computer software's word-count function, excluding the sections of the document listed in Texas Rule of Appellate Procedure 9.4(i)(1).

/s/ *Gary L. Evans*
      Gary L. Evans

15

## CERTIFICATE OF SERVICE

I certify that pursuant to Rule 21a of the Texas Rules of Civil Procedure a true and correct copy of the foregoing instrument has been delivered to all counsel of record on the 26th day of August, 2015.

*/s/ Gary L. Evans*
Gary L. Evans


Christopher S. Kilgore                                    *Via Electronic Filing*
Dottie Sheffield
**KILGORE MCCOWN, PLLC**
2201 Main Street, Suite 212
Dallas, Texas 75201
Telephone: 214-296-4850
Facsimile: 972-532-6496

**ATTORNEYS FOR PLAINTIFF**
**CITY OF BONHAM**

16