

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-23-00027-CV

CITY OF CANTON, Appellant

V.

LEWIS FIRST MONDAY, INC., Appellee

On Appeal from the 294th District Court
Van Zandt County, Texas
Trial Court No. 23-00020

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

MEMORANDUM OPINION

The City of Canton, Texas, has filed an interlocutory appeal from orders entered by the trial court in favor of Lewis First Monday, Inc.[1]  On appeal, the City argues that the trial court erred by denying its plea to the jurisdiction and entering a temporary injunction that failed to include a trial setting.  Because we find that the City's plea to the jurisdiction should have been granted, we reverse the trial court's order denying the plea and vacate the temporary injunction.

## I.      Factual Background

This dispute revolves around access to the First Monday Trade Days (Trade Days), "one of the world's biggest flea markets," located in Canton, Texas, "through the 'Historic Main Gate,'" which is "owned by the City of Canton."  Trade Days takes place "from the Wednesday before the first Monday of the month to the first Monday of the month."  The real estate where vendors sell their wares during Trade Days "is owned primarily by two parties, Lewis First Monday, Inc. . . . and the City of Canton."  Lewis acquired 9.8 acres of property on which Trade Days was held in 2009.  After its 2009 purchase, "Lewis First Monday and its vendors continued to access their property by crossing property owned by the City of Canton."

It is undisputed that Trade Days brings countless visitors from all over the State to the area, leading to an unusual and increasing amount of vehicular and pedestrian traffic.  At a regular meeting of the City Council on February 20, 2018, the Council considered traffic control issues on Trade Days grounds, including a complaint that "Lewis vendors were coming through

---

[1]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts.  *See* TEX. GOV'T CODE ANN. § 73.001.  We follow the precedent of the Twelfth Court of Appeals in deciding this case.  *See* TEX. R. APP. P. 41.3.

the [Historic] Main Gate without passes and they would not stop for the gate attendants."  Even so, it appeared that the matter was dropped for a time since no other minutes for 2018 or 2019 referenced the issue.

In early 2022, Lewis began "fear[ing] for the safety of its vendors and all of the pedestrian traffic crossing their property" and "placed a sign preventing traffic through the 9.8-acre property during the busy hours of 11 [a.m.] and 3 [p.m.]" to alleviate congestion.  Maps included in the record illustrate the locations of the Lewis property, City property, and the gates at issue:



In response to Lewis's sign closing off access to Lewis's property, the City's manager, Lonny Cluck, wrote the following letter to Lewis "on behalf of the City" on May 31, 2022, about Lewis's "decision to close the internal road that [led] from the gate (Historic Main) to the side of the Property adjacent to Highway 19/N. Trade Days Blvd (the 'Tee Section')":

For years, traffic entering onto the Property via the south [Historic Main] gate could directly access the portion of the Property immediately adjacent to . . . the "Tee Section[.]" However, it is the City's understanding that the road is now closed to vehicle traffic Friday-Sunday during the hours of 11 a.m. to 3 p.m., when First Monday Trade Days is in session . . . .

This results in persons wishing to get to the [Tee Section] . . . being diverted onto City-owned portions of the First Monday ground and having to make an approximately ½ mile trip through often-congested areas at peak traffic times, when the prior arrangement allowed those same persons to travel only a few hundred feet. . . . This diversion of your tenant's traffic onto City-owned property has resulted in increased traffic, more congestion, and is not a tenable long-term solution.[2]

. . . . I thus write in an attempt to open up a dialogue and in an attempt to reach a mutually-agreeable solution to the situation. Please also be advised that if we cannot resolve the matter[,] . . . the City will consider all available alternatives to address the problem, which may include the placement of [traffic control devices, dividers, or other traffic-control solutions.] It is hoped that this will not be necessary, but if implemented, we will attempt to provide sufficient notice to allow you to make the needed adjustments to the alternative access points . . . for use by your vendors and shoppers.

On October 18, 2022, in open session, the City Council voted to restrict access to the Historic Main Gate to City vendors during Trade Days. On November 10, 2022, Cluck notified Lewis of the Council's "official action at the October 18, 2022[,] City Council meeting." Cluck's letter said the Council "determined that **ONLY** those authorized to access the City of Canton [Trade Days] w[ould] be granted vehicular access to [the City's] grounds during the times that gates [were] manned for . . . Trades Days." Cluck represented that the action was

---

[2]Cluck's letter contained a footnote explaining the following:

By way of history, when the property was purchased by [your predecessor], the use of the Historic Main Gate to access the Property was contemplated to be a temporary solution, and it was anticipated that one or both of the potential [other] vehicular access points . . . would eventually be used to access the Property. However, this did not take place and the previous arrangement allowing vendors on the Property to directly access it through the short, one-tenth mile direct path continued until the recent closure.

"being taken in an effort to better protect the safety of [the City's] patrons who [were] shopping Canton [Trade Days] Grounds." Accordingly, Cluck wrote that "[v]ehicular access to [Lewis] Property, via City Property, [would] no longer be allowed."

On January 23, 2023, Lewis was granted a Texas Department of Transportation (TxDoT) permit to build a driveway "for vendors to get to locations at . . . Trade Days" from Highway 19. On January 30, 2023, Lewis sued the City. Lewis's second amended petition attached the documents referenced above and sought (1) a declaratory judgment that it had "an easement by estoppel" to the City's Historic Main Gate; (2) declaratory relief that the City engaged in a taking of private property in violation of Sections 2007.041 through 2007.045 of the Texas Government Code; and (3) a temporary restraining order, temporary injunction, and permanent injunction preventing the City from locking the Historic Main Gate or depriving Lewis vendors from its use. The petition also asserted that the City had violated Article I, Section 17, of the Texas Constitution.

In response, the City filed a plea to the jurisdiction. The City's plea asserted, among other things, that the trial court lacked jurisdiction because Lewis's petition sought to challenge the City's ability to control its property in connection with governmental functions, including traffic control. Because Lewis had obtained a TxDoT permit "allowing it to construct a direct access point off of State Highway 19 onto [Lewis]'s property," the City also asserted that Lewis's "anticipatory concerns about access . . . [were] speculative and not ripe."

After a hearing, the trial court denied the City's plea to the jurisdiction and granted a temporary injunction ordering the City to refrain from locking or disallowing Lewis's vendors

5

through the Historic Main Gate or undertaking any other action that might discourage Lewis's vendors from using it.

## II.     The Plea to the Jurisdiction Should Have Been Granted

In the City's first point of error, it argues that the trial court should have granted its plea to the jurisdiction on grounds of immunity. "Sovereign immunity bars suits against [the State and its agencies] unless there is a clear and explicit constitutional or statutory waiver of immunity." *Dann v. Athens Mun. Water Auth.*, No. 12-07-00087-CV, 2007 WL 2460058, at *1 (Tex. App.—Tyler Aug. 31, 2007, no pet.) (mem. op.) (citing *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997), *superseded by statute on other grounds as stated in Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004) (plurality op.)). "Governmental immunity" derives from sovereign immunity and "protects political subdivisions of the [S]tate, including [cities], from suit and liability." *Catoe v. Henderson Cnty.*, No. 12-16-00259-CV, 2017 WL 1908645, at *1 (Tex. App.—Tyler May 10, 2017, no pet.) (mem. op.) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3)(b)).

"Immunity from suit bars a lawsuit against [a State or political subdivision] unless the legislature has expressly consented to the suit." *Dann*, 2007 WL 2460058, at *1. "The legislature may consent to suit by statute, but such consent must be by clear and unambiguous language." *Id.* (citing *Fed. Sign*, 951 S.W.2d at 405). "A party suing a governmental entity must establish the [S]tate's consent, which may be alleged either by reference to a statute or to express legislative permission." *Id.* (quoting *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999) (per curiam)). "Absent such consent, the trial court does not have subject[-]matter

6

jurisdiction." *Id.* (citing *Jones*, 8 S.W.3d at 638). "Because sovereign [or governmental] immunity defeats a trial court's jurisdiction, it is properly asserted in a plea to the jurisdiction." *Id.* (citing *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004)).

### A.    Standard of Review

"A plea questioning the trial court's jurisdiction raises a question of law that we review de novo." *City of Canton v. Zanbaka, USA, LLC*, No. 12-12-00006-CV, 2013 WL 3377436, at *1 (Tex. App.—Tyler July 3, 2013, pet. denied) (mem. op.) (citing *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007)). When, as here, "a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004) (plurality op.) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)).

"We construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent." *Id.* Even so, "a plaintiff filing suit against a governmental entity must affirmatively demonstrate the court's jurisdiction to hear the lawsuit under the Texas Tort Claims Act or some other statute that waives the entity's immunity from suit." *Dann*, 2007 WL 2460058, at *2 (citing *Tex. Dep't of Crim. Just. v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001)). "If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court[']s jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend." *Miranda*, 133 S.W.3d at 226–27. "If the pleadings affirmatively negate the existence of jurisdiction, then a

7

plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend."
*Id.* at 227; *see Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

**B.      The City's Challenge to Lewis's Petition**

The City argues that Lewis's petition failed to invoke the trial court's subject-matter jurisdiction.  In analyzing this issue, we address each cause of action raised by Lewis's live petition.

**1.      Declaratory Judgment**

The Uniform Declaratory Judgments Act "does not enlarge a trial court's jurisdiction"; it is a procedural device for deciding cases already within a court's jurisdiction.  *City of El Paso v. Heinrich*, 284 S.W.3d 366, 370–71 (Tex. 2009); *see Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002); *Zanbaka, USA, LLC*, 2013 WL 3377436, at *1. "Recasting [an action] as a request for declaratory relief does not avoid . . . [governmental] immunity."  *Dann*, 2007 WL 2460058, at *5; *see City of Dallas v. Turley*, 316 S.W.3d 762, 768 (Tex. App.—Dallas 2010, pet. denied) (even though declaratory judgment can be used to clarify a person's legal rights, "[i]f the claim challenges actions taken under an ordinance or statute rather than the validity of the ordinance or statute itself, the governmental entity is immune from suit on the claim").  Here, Lewis sought declarations that it had an easement by estoppel to the Historic Main Gate and that the City engaged in a taking of real property under Sections 2007.041 through 2007.045 of the Texas Government Code, known as "the Private Real Property Rights Preservation Act."  TEX. GOV'T CODE ANN. § 2007.001.  We treat these two causes of action separately.

8

### a. Easement by estoppel

"An easement confers upon one person the valuable right to use the land of another for a specific purpose." *Horner v. Heather*, 397 S.W.3d 321, 325 (Tex. App.—Tyler 2013, no pet.) (citing *Hubert v. Davis*, 170 S.W.3d 706, 710 (Tex. App.—Tyler 2005, no pet.)). "Since an easement is an interest in land, the grant of an easement should be drawn and executed with the same formalities as a deed to real estate." *Id.* "The doctrine of equitable estoppel, or easement by estoppel, provides an exception to prevent injustice and protect innocent parties from fraud." *Id.*

"The doctrine of easement by estoppel holds that the owner of the alleged servient estate may be estopped to deny the existence of an easement by making representations that have been acted upon by the holder of the alleged dominant estate." *Id.* (quoting *Ingham v. O'Block*, 351 S.W.3d 96, 100 (Tex. App.—San Antonio 2011, pet. denied)). In general, "[t]hree elements are necessary to the creation of an easement by estoppel: (1) a representation communicated, either by word or action, to the promisee; (2) the communication was believed; and (3) the promisee relied on the communication." *Id.* "The gravity of a judicial means of acquiring an interest in land of another solely by parol evidence requires that equitable estoppel be strictly applied." *Id.* "The estoppel should be certain, precise, and clear." *Id.*

#### i. Lewis's Petition Demonstrates a Defect in Jurisdiction over the Equitable Estoppel Claim

Lewis's petition does not state that there was any oral or written representation establishing that it had an easement across City property. Instead, the petition states that, by allowing Lewis's vendors to use the Historic Main Gate, the City had "communicated to [Lewis]

9

. . . month after month that they [had] an easement and [were] allowed to use the city's entrance." Lewis argued that the "failure to communicate otherwise . . . until recently . . . [meant] the City of Canton [had] impliedly and indirectly communicated to [Lewis] that they [were] allowed to use their entrance." The petition states that the communication was believed and "evidenced by the fact that Lewis . . . and its vendors used the City of Canton entrance month after month for years on end."

Similar arguments were made by the litigants and rejected by the Tyler Court of Appeals in *Horner* because an easement by estoppel cannot be established by an implied and indirect communication but must be "certain, precise, and clear." *Horner*, 397 S.W.3d at 325. There, the Heatherses argued "that they, and Heather's [sic] father, acquired an easement over Horner's tract because they used the claimed easement for more than sixty-five years, that this use continued, unabated and without objections, to the [then-]present time, and that . . . Horner [and his predecessors] acquiescesced [sic] in that use." *Id.* In rejecting the Heatherses' argument, the Tyler Court of Appeals found that testimony showing permissive use and lack of ownership of the roadway was insufficient to create an easement by estoppel since it constituted no evidence of any representation from Horner or his predecessors that the Heatherses had an interest in the roadway. *Id.* at 326. The Lewis petition describes permissive use.

Likewise, as in *Horner*, Lewis's petition does not identify any official act of the City communicating the establishment of an easement to the Historic Main Gate.[3] Therefore, under

---

[3]Also,

> "No estoppel can grow out of dealings with public officers of limited authority, and the doctrine of equitable estoppel cannot ordinarily be invoked to defeat a municipality in the prosecution of its public affairs because of an error or mistake of, or because of a wrong committed by, one of its

10

the precedent of the Tyler court, Lewis's petition, and the argument that the City permitted Lewis to use the public roadway, creates no easement or interest in that public roadway.

### ii. Equitable Estoppel Will Not Prevent the City's Regulation of a Governmental Function

Moreover, "equitable estoppel will not lie against the Government as against private litigants." *City of White Settlement v. Super Wash, Inc.*, 198 S.W.3d 770, 773 (Tex. 2006) (quoting *Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 419 (1990)). This is because "the interests of an individual seeking to estop a governmental entity must at times yield to the general public's interest in a government that is not encumbered by the threat of unlimited liability." *Id.* at 774. As a result, the general rule is that "a city cannot be estopped from exercising its governmental functions." *Id.* at 773. For this reason, estoppel cases are exceedingly rare. In 2013, the Supreme Court of Texas noted that, when *Super Wash* examined *Roberts v. Haltom City* and *City of San Antonio v. Schautteet*, it was "explaining the significance of *the only two cases where* [*the Supreme Court had*] *applied estoppel against the government*." *Tex. Dep't of Transp. v. A.P.I. Pipe & Supply, LLC*, 397 S.W.3d 162, 170 n.36 (Tex. 2013) (emphasis added).[4]

---

officers or agents which has been relied upon by a third party to his detriment. So a municipality is not estopped by the unauthorized acts of its officer or agent, or by his wrongful act. Nor can an estoppel result from official fraud and corruption. The text gives only two exceptions to the rule, and both are cases in which the city received benefits from the irregular or wrongful act and afterwards sought to repudiate it."

*Dann*, 2007 WL 2460058, at *4 (citations omitted) (quoting *City of San Angelo v. Deutsch*, 91 S.W.2d 308, 310 (Tex. 1936)).

[4]That appears to still be true. There have not been any post-2013 Supreme Court of Texas cases citing *Super Wash*, and the only two Supreme Court of Texas cases citing *Texas Department of Transportation v. API Pipe* dealt with other issues (the notice given by recorded deeds and jurisdiction being a question of law).

Even so, "a municipality may be estopped in those cases where justice requires its application, and there is no interference with the exercise of its governmental functions." *Super Wash*, 198 S.W.3d at 774 (quoting *City of Hutchins v. Prasifka*, 450 S.W.2d 829, 836 (Tex. 1970)). This exception applies "only in exceptional cases where the circumstances clearly demand its application to prevent manifest injustice." *Id.* (quoting *Prasifka*, 450 S.W.2d at 836). Such exceptional cases include circumstances where "city officials may have affirmatively misled the parties seeking to estop the city [by making] misleading statements result[ing] in the permanent loss of their claims against the cities," or "[e]vidence that city officials acted deliberately to induce a party to act in a way that benefitted the city but prejudiced the [opposing] party." *Id.* at 775. In this case, Lewis alleges neither that a person authorized to speak for the City affirmatively misled Lewis nor that a city official deliberately induced Lewis to act in a way that benefited the City but prejudiced Lewis. To the contrary, Lewis does not complain of any misrepresentation or inducement that preceded reliance and harm.

Here, we conclude that Lewis's equitable estoppel claim fails because, even assuming without deciding that the facts reflect a situation where doing justice might warrant application of estoppel principles, application of equitable estoppel would interfere with the City's exercise of its governmental functions, as we explain below. *See Dann*, 2007 WL 2460058, at *4–5.

"[M]unicipalities . . . share in the [S]tate's inherent immunity." *Wasson Ints., Ltd. v. City of Jacksonville* (*Wasson I*), 489 S.W.3d 427, 430 (Tex. 2016) (citing *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006)). "But '[t]hey represent no sovereignty distinct from the [S]tate and possess only such powers and privileges as have been expressly or impliedly

12

conferred upon them.'" *Id.* (first alteration in original) (quoting *Payne v. Massey*, 196 S.W.2d 493, 495 (Tex. 1946)). As a result, "local governmental entities enjoy [immunity] only when they act 'as a branch' of the [S]tate and not when they act 'in a proprietary, non-governmental capacity.'" *Dallas/Fort Worth Int'l Airport Bd. v. Vizant Techs., LLC*, 576 S.W.3d 362, 366–67 (Tex. 2019) (quoting *Wasson Ints., Ltd. v. City of Jacksonville*, 559 S.W.3d 142, 146 (Tex. 2018)). "Whether a municipality enjoys immunity from suit thus depends on 'the relationship, or lack thereof, between the municipality and the [S]tate, not the relationship between the municipality and the party bringing suit.'" *Wasson Ints., Ltd v. City of Jacksonville* (*Wasson II*), 559 S.W.3d 142, 146 (Tex. 2018) (quoting *City of Georgetown v. Lower Colo. River Auth.*, 413 S.W.3d 803, 811 (Tex. App.—Austin 2013, pet. dism'd)). The Texas Supreme Court has stated,

> [T]he court should consider whether estoppel will affect public safety, bar future enforcement of [an] ordinance, or otherwise impede the city's ability to serve the general public. A city should not be estopped if doing so would hinder its ability to ensure public safety. The city may be estopped, however, if doing so will not frustrate the purpose for which the [official act] was enacted nor bar the city from enforcing [it] in the future.

*Super Wash, Inc.*, 198 S.W.3d at 777 (citations omitted).

Citing *Wasson II*, Lewis argues that the City's act to restrict access to the Historic Main Gate was proprietary because (1) the Trade Days grounds were owned by the City, as well as private entities like Lewis, (2) the grounds were leased to various vendors who sold their wares at Trade Days, and (3) restricting access of the Historic Main Gate benefited the City's vendors and the City. The *Wasson* factors for determining whether an activity is governmental or proprietary, cited and argued by Lewis, are particularly useful in contract cases "[w]hen a particular municipal activity is *not included in the statutory list* of governmental functions." *City*

13

*of League City v. Jimmy Changas, Inc.*, No. 21-0307, 2023 WL 3909986, at *6 (Tex. June 9, 2023) (emphasis added) (citing *Wasson II*, 559 S.W.3d at 150).

Yet, the Supreme Court of Texas has long held that traffic control is a municipal governmental function. *City of Arlington v. Lillard*, 294 S.W. 829, 830 (1927). Further, the Texas Constitution specifically authorizes the legislature to define governmental and proprietary functions "for all purposes." *Jimmy Changas, Inc.*, 2023 WL 3909986, at *3 (quoting TEX. CONST. art. XI, § 13). To determine whether the City's act is a governmental or proprietary act, we may also look to "the legislature['s] . . . enumerat[ion of] particular functions as governmental or proprietary" contained in the Texas Tort Claims Act (TTCA).[5] *Vizant Techs., LLC*, 576 S.W.3d at 366–67. Under the TTCA, "regulation of traffic" is a governmental function. TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(21). "Governmental functions 'encompass activities that are closely related to or necessary for performance of the governmental activities designated by statute.'" *City of Austin v. Findley*, No. 03-21-00015-CV, 2022 WL 1177605, at *3 (Tex. App.—Austin Apr. 21, 2022, no pet.) (mem. op.) (quoting *Rogers v. City of Houston*, 627 S.W.3d 777, 795 (Tex. App.—Houston [14th Dist.] 2021, no pet.)). Lewis's petition shows that both parties were mainly concerned with pedestrian safety considering the unusual amounts of vehicular traffic at Trade Days. Lewis's petition said that, to

---

[5]Estoppel is an equitable remedy, and an easement by estoppel or "estoppel in pais" is a "creature of equity." *Storms v. Tuck*, 579 S.W.2d 447, 451 (Tex. 1979). It is not a tort cause of action within the meaning of the TTCA, and it is not a contract cause of action within the meaning of the *Wasson* cases. In *Super Wash*, the Supreme Court noted that the TTCA is helpful "because it contains a nonexclusive list of specific, municipal functions that the legislature has deemed governmental." *Super Wash*, 198 S.W.3d at 776–77. "Generally, a court may estop a city only if it would not interfere with the city's ability to perform any act that the Legislature has deemed, or that the court determines to be, a municipal governmental function." *Id.* Here, both the courts and the legislature have deemed traffic control government functions.

alleviate its concern "for many months about vehicular traffic . . . and its danger for pedestrians," Lewis "placed a sign preventing traffic through the 9.8-acre property during the busy hours of 11 [a.m.] and 3 [p.m.]." Lewis's petition attached Cluck's letter stating that Lewis's decision to "diver[t]" its "tenant's traffic onto City-owned property . . . resulted in <u>increased traffic</u> [and] <u>more congestion</u>." As a result, the City Council voted to restrict access to the Historic Main Gate to allow only City vendors.

The Historic Main Gate is located on City property, and regulation of traffic is a governmental function. *See Super Wash, Inc.*, 198 S.W.3d at 777–78 ("[E]stopping the City from enforcing the [official act] . . . would nevertheless preclude the City from employing its chosen method of regulating traffic along Longfield Drive and, thereby, remove some of its discretion in determining how to best protect the public's safety, both of which are classic governmental functions."); *VIA Metro. Transit v. Garcia*, 397 S.W.3d 702, 706 (Tex. App.—San Antonio 2012, pet. denied). "A general-law municipality [like Canton] has exclusive control over the highways, streets, and alleys of the municipality." TEX. TRANSP. CODE ANN. § 311.002. "Pursuant to its police power, a city is authorized to enact ordinances tending to promote the general welfare of the public in the use of the streets and sidewalks." *Hixon v. State*, 523 S.W.2d 711, 713 (Tex. Crim. App. 1975). As a result, "there can be no serious debate that regulation of traffic . . . is a quintessential function of a city's police power, especially given the statutory grant to a city of authority over its streets, thus serving a legitimate public purpose." *Enclave Arlington Assocs. Ltd. P'ship v. City of Arlington, Tex.*, 669 F. Supp. 2d 735, 745 (N.D. Tex. 2009), *aff'd*, 401 F. App'x 936 (5th Cir. 2010). This is because safety is a legitimate state

15

interest.  *See City of San Antonio v. TPLP Off. Park Props.*, 218 S.W.3d 60, 65 (Tex. 2007) (per curiam) ("The City argues that closure of access to Freiling [Drive from a private business driveway] is related to at least two governmental interests:  safety and separating commercial traffic from a residential neighborhood to improve the residents' quality of life.  These purposes both constitute legitimate state interests.").

Even though the City may have received a benefit from its decision, the record demonstrates that restriction of the Historic Main Gate to City vendors was made primarily for the purpose of keeping pedestrians safe and decreasing vehicular traffic.  As a result, the decision primarily benefited the general public that swarms to this area during Trade Days.[6]  "[E]stopping a City from employing its chosen method to regulate traffic would improperly interfere with the City's performance of its governmental functions," but that is exactly what Lewis seeks to do by its claim seeking a declaratory judgment based on easement by estoppel.  *Id.* at 67.

We conclude not only that Lewis's petition failed to allege facts showing that it could seek a declaratory judgment based on easement by estoppel but that the City was immune from such a claim because it would interfere with the City's performance of regulating traffic, which is a governmental function.  As a result, the petition demonstrates an incurable defect in jurisdiction over the declaratory judgment claim seeking equitable estoppel.

**b.  The Private Real Property Rights Preservation Act**

Lewis's petition also asked the trial court to declare that the City had engaged in a taking of private property without following the requirements of the Private Real Property Rights

---

[6]There is no information suggesting that the City's vendors are mostly inhabitants of the City.

16

Preservation Act (the Act). "Sovereign immunity to suit and liability is waived and abolished to the extent of liability created by [the Act]." TEX. GOV'T CODE ANN. § 2007.004(a). The Act applies to "the adoption or issuance of an ordinance, rule, . . . policy, guideline, or similar measure." TEX. GOV'T CODE ANN. § 2007.003(a)(1). It defines a government taking as

> a governmental action that affects private real property, in whole or in part or temporarily or permanently, in a manner that requires the governmental entity to compensate the private real property owner as provided by the Fifth and Fourteenth Amendments to the United States Constitution or Section 17 or 19, Article I, Texas Constitution[.]

TEX. GOV'T CODE ANN. § 2007.002(5)(A). A taking under Chapter 2007 of the Texas Government Code is also defined as "a governmental action that:"

> (i)     affects an owner's private real property that is the subject of the governmental action, in whole or in part or temporarily or permanently, in a manner that restricts or limits the owner's right to the property that would otherwise exist in the absence of the governmental action; and

> (ii)     is the producing cause of a reduction of at least 25 percent in the market value of the affected private real property, determined by comparing the market value of the property as if the governmental action is not in effect and the market value of the property determined as if the governmental action is in effect.

TEX. GOV'T CODE ANN. § 2007.002(5)(B). Lewis's petition contains no language suggesting that there was any reduction in its property value as a result of the City's actions. As a result, the pleading raises nothing showing that Lewis is alleging a taking under subsection (5)(B) of Section 2007.002. Accordingly, we focus on subsection (5)(A) of Section 2007.002.

17

Lewis argues that the City's "policy" is a taking under Chapter 2007 because it "disallows private property owners access to their property."[7] *See* TEX. GOV'T CODE ANN. § 2007.003(a)(1). Yet, Chapter 2007 does not apply to any action by a city other than a governmental action "that has effect in the extraterritorial jurisdiction of the municipality, excluding annexation, . . . that enacts or enforces an ordinance, rule, regulation, or plan that does not impose identical requirements or restrictions in the entire extraterritorial jurisdiction of the municipality." TEX. GOV'T CODE ANN. § 2007.003(a)(3), (b)(1); *see City of Lake Jackson v. Adaway*, No. 01-22-00033-CV, 2023 WL 3588383, at *13 (Tex. App.—Houston [1st Dist.] May 23, 2023, no pet.) (mem. op.). As a result, "Section 2007.003(a)(3), by its ordinary meaning, describes only a city's action that 'enacts or enforces an ordinance, rule, regulation, or plan' and that 'does not impose identical requirements or restrictions' throughout the entirety of the city's extraterritorial jurisdiction." *Id.* at *14 (citing TEX. GOV'T CODE ANN. § 2007.003(a)(3)). The City's action of restricting access to the Historic Main Gate to City vendors "did not impose any kind of requirement or restriction in its extraterritorial jurisdiction." *Id.* (citing *City of Houston v. Guthrie*, 332 S.W.3d 578, 590 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)). As a result, Chapter 2007 does not waive governmental immunity. *Id.* at *14.[8]

---

[7]The Act "does not apply to . . . the discontinuance or modification of a program or regulation that provides a unilateral expectation that does not rise to the level of a recognized interest in private real property." TEX. GOV'T CODE ANN. § 2007.003(b)(5).

[8]Also, Chapter 2007.003 does not apply to "an action that . . . (A) is taken in response to a real and substantial threat to public health and safety; (B) is designed to significantly advance the health and safety purpose; and (C) does not impose a greater burden than is necessary to achieve the health and safety purpose." TEX. GOV'T CODE ANN. § 2007.003(b)(13).

Because Chapter 2007 does not apply to the City's actions in this case, we conclude that the trial court should have granted the plea to the jurisdiction on Lewis's Chapter 2007 claims.[9]

### 2.     Lewis's Takings-Clause Claim

Next, Lewis asserted a separate cause of action under Article I, Section 17, of the Texas Constitution. In this portion of its petition, Lewis pled that the City's decision to restrict access to the Historic Main Gate "prevent[ed] any safe access to plaintiff's property during the business hours of [Trade Days]" and that there was "no adequate monetary compensation for this restriction." We determine not only that Lewis's petition was insufficient to assert a taking under the Takings Clause, but, more importantly, that it demonstrated an incurable defect in the trial court's jurisdiction.

### a.     The Takings Clause

"There is a clear and unambiguous waiver of immunity from suit for inverse-condemnation claims within the ambit of Article I, Section 17[,] of the Texas Constitution (hereinafter Takings Clause)." *Pate v. City of Rusk*, No. 12-22-00118-CV, 2022 WL 3754714, at *3 (Tex. App.—Tyler Aug. 30, 2022, no pet.) (mem. op.) (citing TEX. CONST. art. I, § 17). "Therefore, governmental immunity does not shield the City from a claim for compensation under the Takings Clause." *Id.* (citing TEX. CONST. art. I, § 17; *State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007)). "The Takings Clause mandates that no person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." *Id.* (citing TEX. CONST. art. I, § 17).

---

[9]This finding incorporates our analysis of Lewis's Takings-Clause claims in the following section.

19

"To properly assert an inverse-condemnation claim against a governmental entity, a party must plead the following elements: (1) the governmental entity intentionally performed an act in the exercise of its lawful authority; (2) that resulted in the taking, damaging, or destruction of the party's property; (3) for public use." *Id.*

### b. Pleading Deficiencies

The first element of a Takings-Clause claim, intent, can be satisfied by alleging facts to show the governmental entity "(1) knows that a specific act is causing identifiable harm; or (2) knows that the specific property damage is substantially certain to result from an authorized government action." *City of Dallas v. Jennings*, 142 S.W.3d 310, 314 (Tex. 2004). A plaintiff does not need to allege that the governmental entity intended to cause the damage, but allegations of mere negligence or that the governmental entity intended to commit the act that caused the damage do not satisfy the intent element. *Id.* at 313. Our review of Lewis's Article I, Section 17, claim shows that its pleading omitted any reference with respect to the intent element.

The second element required Lewis to show a taking. "Takings may be classified as either physical or regulatory." *San Jacinto River Auth. v. Medina*, 627 S.W.3d 618, 622 (Tex. 2021) (citing *Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 554 (Tex. 2004)). "A physical taking occurs when the government literally takes property from its owner, such as when it 'authorizes an unwarranted physical occupation of an individual's property.'" *Id.* (citing *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 933 (Tex. 1998)). Because the City's decision

20

imposed a restriction on its own property, not Lewis's, a physical taking was not at issue in this case.

"A regulatory taking occurs when the government restricts a property owner's rights to such an extent as to become the functional equivalent of a physical seizure." *Id.* (citing *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 490 (Tex. 2012)). This can occur if a regulation or policy "deprives the owner of all economically beneficial use of the property, *Mayhew*, 964 S.W.2d at 935; or . . . it imposes restrictions that unreasonably interfere with the owner's right to use and enjoy the property, *id.* at 936–37." *City of Houston v. Guthrie*, 332 S.W.3d 578, 589 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Because nothing in Lewis's petition suggests that it was deprived of all economic benefit of its property, we focus on the "use and enjoyment" issue. "Determining whether the government has unreasonably interfered with a landowner's right to use and enjoy property requires a consideration of two factors: (1) the economic impact of the regulation and (2) the extent to which the regulation interferes with distinct investment-backed expectations."[10] *Id.* (citing *Mayhew*, 964 S.W.2d at 935). Lewis's petition contains no discussion of these factors.

Yet, "[a]n inverse condemnation may occur when the government physically appropriates or invades the property, or when it unreasonably interferes with the landowner's right to use and enjoy the property, such as by restricting access or denying a permit for development." *Westgate, Ltd. v. State*, 843 S.W.2d 448, 452 (Tex. 1992). "As in statutory condemnation, the

---

[10]Interference with a right to use and enjoy the property "to the extent that it has had a severe economic impact which interferes with . . . distinct investment-backed expectations" "is referred to as a 'Penn Central' takings claim and arises when a governmental entity has denied a landowner approval to develop [their] property." *City of Paris v. Abbott*, 360 S.W.3d 567, 578 (Tex. App.—Texarkana 2011, pet. denied) (quoting *City of Carrollton v. HEB Parkway S., Ltd.*, 317 S.W.3d 787, 793 (Tex. App.—Fort Worth 2010, no pet.)).

21

appropriated property must also be applied to public use." *Id.* (citing TEX. CONST. art. I, § 17). Here, the City had not appropriated, damaged, or destroyed Lewis's property for public use. Rather, the City was given limited access to its own property during Trade Days, which occurred once a month for several days, through a valid exercise of its police power. The city council vote neither restricted access to Lewis's property nor denied a permit for development. Lewis's petition stated that the City "even suggested alternative entrances for [Lewis] to use" and that Lewis had obtained TxDoT permission to create another driveway off of Highway 19. As a result, Lewis did not meet its burden to plead that the City engaged in a taking by its city council vote to restrict access to the Historic Main Gate to City vendors. *See Dann*, 2007 WL 2460058, at *2.

### c.       Incurable Defects

Lewis's petition also reveals three incurable defects in the trial court's jurisdiction. These include the lack of a final action by the city council, lack of a direct governmental restriction on Lewis's property, and the availability of another route to access Lewis's property.

First, unlike Chapter 2007, which applies to policies and guidelines, a claim under the Takings Clause requires "a final decision regarding the application of the regulations to the property at issue." *City of Crowley v. Ray*, 558 S.W.3d 335, 343 (Tex. App.—Fort Worth 2018, pet. denied) (quoting *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985), *overruled on other grounds by Knick v. Twp. of Scott, Pa.*, 139 S. Ct. 2162 (2019)). A Type A General Law Municipality, like Canton, acts by adopting "an ordinance, act, law, or regulation." TEX. LOC. GOV'T CODE ANN. § 51.012. Here, Lewis's

22

petition established that the last official act by the city council was recorded in the city council's

October 18, 2022, minutes, as follows:

> CONSIDER RESTRICTING ACCESS OF FIRST MONDAY GROUNDS TO CITY OF CANTON VENDORS THROUGH MAIN GATE . . .
> Councilmember Melton made a motion to restrict access of the First Monday grounds to City of Canton vendors through the Main Gate . . . beginning at the January Trade Days. Councilmember Moore seconded.
>
>     Council Member - Nathan Moore: Approve
>     Mayor Pro Temp - Randon Sumner: Approve
>     Council Member - Chase Melton: Approve
>     Council Member - Blake Fowler: Approve
>     Council Member - Jim Fuller: Approve

Lewis points to no other official act, regulation, law, or ordinance showing that this was accomplished by a final act.[11] In the absence of a final act by the City, nothing showed that the city council's action could not have been undone by another city counsel vote.

Second, the Texas Supreme Court has "held that a lack of a direct governmental restriction of the owner's use of [his] land . . . is dispositive in takings cases." *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 480 (Tex. 2012) (citing *Westgate, Ltd.*, 843 S.W.2d at 450). In *Westgate*, the Texas Supreme Court clarified, "The primary issue is whether a landowner may recover damages for inverse condemnation under TEX. CONST. art. I, § 17[,] where the government has not physically appropriated, denied access to, or otherwise directly restricted the use of the landowner's property. Our answer is no[.]" *Westgate*, 843 S.W.2d at

---

[11]Although the November 10 letter by Cluck stated that Lewis's vendors would not be allowed through the Historic Main Gate during Trade Days, "[s]tatements by individual members of a council or board are not binding on a governmental body which may act only in its official capacity." *Laza v. City of Palestine*, No. 06-18-00051-CV, 2022 WL 3449819, at *13 (Tex. App.—Texarkana Aug. 18, 2022, pet. denied) (mem. op.) (alteration in original) (quoting *Cook v. City of Addison*, 656 S.W.2d 650, 657 (Tex. App.—Dallas 1983, writ ref'd n.r.e)). As a result, letters or "memoranda from the city manager and relied on by the property owners are not binding on the city." *Cook v. City of Addison*, 656 S.W.2d 650, 657 (Tex. App.—Dallas 1983, writ ref'd n.r.e)

450; *see Stevens v. City of Dublin*, 169 S.W. 188, 190 (Tex. App.—Fort Worth 1914, no writ) (closing of a street under exercise of police power does not constitute a taking under the Takings Clause). Here, the City made no restriction on Lewis's property, and the petition also showed that Lewis had obtained a permit to build an access point driveway.

Third, "[Lewis has] provided no authority, and we have found none, holding that a landowner has a property right to a particular road to access [its] property." *Wilkinson v. Dallas/Fort Worth Int'l Airport Bd.*, 54 S.W.3d 1, 16 (Tex. App.—Dallas 2001, pet. denied). Because "'all property is held subject to the valid exercise of the police power,' . . . not every regulation is a compensable taking . . . ." *Sheffield Dev. Co. v. City of Glenn Height*s, 140 S.W.3d 660, 670 (Tex. 2004) (quoting *City of College Station v. Turtle Rock Corp.*, 680 S.W.2d 802, 804 (Tex. 1984)). The Texas Supreme Court has held that "[c]losing an access point and merely causing diversion of traffic or circuity of travel does not result in a compensable taking." *TPLP Off. Park Props.*, 218 S.W.3d at 66–67 (also finding that "[a] reduction in lease rates that results merely from traffic being required to travel a more circuitous route . . . is not compensable") (citing *State v. Wood Oil Distrib., Inc.*, 751 S.W.2d 863, 865 (Tex. 1988)); *see Cnty. of Bexar v. Santikos*, 144 S.W.3d 455, 460 (Tex. 2004) ("That a public project requires increased circuity of travel is not enough to make damages compensable [under the Takings Clause]. Nothing in our previous cases suggests that circuity of travel *within* a particular property is any more compensable than circuity of travel *around* it." (footnote omitted) (citation omitted)); *see also Enclave Arlington Assocs. Ltd. P'ship.*, 669 F. Supp. 2d at 745 (finding no taking under the Fifth Amendment where there was lack of any physical invasion on plaintiff's

24

property and the city's action was for "regulat[ion of] pedestrian and vehicular traffic[, which wa]s exactly the sort of exercise of a city's police power that qualifie[d] as a legitimate public purpose"[12]); *Dann*, 2007 WL 2460058, at \*3 (an "expectation that does not rise to the level of a recognized interest in private real property" is not a taking under Chapter 2007).

Because (1) nothing showed that the city council engaged in any act in furtherance of its vote to consider restricting access to the Historic Main Gate, (2) there was a lack of a direct governmental restriction of Lewis's use of its land, and (3) a diversion of traffic or circuity of travel is not a compensable taking, we conclude that Lewis's petition demonstrated an incurable defect in jurisdiction over its Takings-Clause claim.

### 3.    Lewis's derivative claims

Lewis's petition alleged three derivative requests, including requests for temporary injunctive relief, a temporary restraining order, and a permanent injunction. "To obtain a temporary injunction, the applicant must plead and prove (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Morrison v. Colbert*, No. 12-18-00206-CV, 2019 WL 968512, at \*3 (Tex. App.—Tyler Feb. 28, 2019, no pet.) (mem. op.). A temporary restraining order requires proof "from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result." TEX. R. CIV. P. 680.

In seeking its temporary injunction, Lewis's petition stated it would "probably prevail on its claims . . . because of its rights to the 'Historic Main Gate' through an easement by estoppel."

---

[12]The Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation." U.S. CONST. amend. V.

Its requests for a permanent injunction and a temporary restraining order were also based on the easement by estoppel claim.

We have determined that the trial court should have granted the City's plea to the jurisdiction on Lewis's easement by estoppel, Chapter 2007, and Takings-Clause claims. As a result, nothing showed a waiver of governmental immunity on Lewis's derivate requests for temporary injunctive relief, a temporary restraining order, and a permanent injunction. The City's plea to the jurisdiction on those derivative claims should have been granted.[13]

## III.    We Vacate the Temporary Injunction

The City also challenges in this interlocutory appeal the trial court's entry of the temporary injunction. We have already determined that the trial court should have granted the City's plea to the jurisdiction, which is dispositive of this issue.

Also, temporary injunctions are subject to the requirements of Rule 683 of the Texas Rules of Civil Procedure, which states, "Every order granting a temporary injunction shall include an order setting the cause for trial on the merits with respect to the ultimate relief sought." TEX. R. CIV. P. 683. "The procedural requirements of Rule 683 are mandatory, and an order granting a temporary injunction that fails to strictly comply with the rule is subject to being declared void and dissolved." *Layton v. Ball*, 396 S.W.3d 747, 751 (Tex. App.—Tyler 2013, no pet.) (citing *Qwest Commc'ns Corp. v. AT & T Corp.*, 24 S.W.3d 334, 337 (Tex. 2000) (per curiam)); *see Pigott v. Miller*, No. 12-09-00431-CV, 2011 WL 198598, at *2 (Tex. App.— Tyler Jan. 19, 2011, no pet.) (mem. op.).

---

[13]Suggesting that Lewis's harm is not irreparable, the City argues that Lewis's "concerns conflict with its own ability to access its property directly off of State Highway 19 nearby under its permit from TxDOT."

26

Here, the trial court's temporary injunction order failed to set a trial date. As a result, it is void. *Evans v. C. Woods, Inc.*, 34 S.W.3d 581, 582 (Tex. App.—Tyler 1999, no pet.) (citing *InterFirst Bank San Felipe, N.A. v. Paz Constr. Co.*, 715 S.W.2d 640, 641 (Tex. 1986) (per curiam)); *see Ball*, 396 S.W.3d at 751 (citing *Qwest Commc'ns Corp.*, 24 S.W.3d at 337). Accordingly, we "reverse the trial court, declare the order void[,] and dissolve the injunction." *Evans*, 34 S.W.3d at 582.

## IV.    Conclusion

We reverse the trial court's denial of the City's plea to the jurisdiction, vacate the trial court's temporary order, and render a take-nothing judgment in favor of the City.

Charles van Cleef
Justice

Date Submitted:    July 12, 2023
Date Decided:    August 3, 2023

27